# RECORD NO. 22-1498

In The

# United States Court Of Appeals

## For The Fourth Circuit

**HANNAH P.,**

*Plaintiff – Appellant,*

**v.**

**AVRIL D. HAINES, in her official capicity as Director of National Intelligence,**

*Defendant – Appellee,*

**and**

**MARK EWING, in his personal capacity McLean, VA**

*Defendant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

## BRIEF OF APPELLANT

**Timothy P. Bosson**
**Isaiah R. Kalinowski**
**BOSSON LEGAL GROUP PC**
**8300 Arlington Blvd.,**
**Suite B2**
**Fairfax, VA 22031**
**(571) 775-2529**
**tbosson@bossonlaw.com**
**ikalinowski@bossonlaw.com**

***Counsel for Appellant***

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-1498 Caption: Hannah P. v. Avril D. Haines, in her official capacity as Director of National Intelligence

Pursuant to FRAP 26.1 and Local Rule 26.1,

Hannah P.
(name of party/amicus)

who is appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Timothy P. Bosson Date: 5/6/2022

Counsel for: Hannah P.

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ........ iii

STATEMENT OF JURISDICTION........ 1

STATEMENT OF ISSUES ........ 1

STATEMENT OF THE CASE........ 1

Procedural History ........ 6

SUMMARY OF ARGUMENT ........ 9

ARGUMENT ........ 11

Standard of Review........ 11

Discussion ........ 11

I. The Court erred in finding that wages and benefits lost because of ODNI's decision not to hire Hannah for the Cyber position were consequential damages ........ 11

II. The trial court erred in placing the burden of proof as to causation solely on Hannah once she had proven that ODNI made its hiring decision, at least in part, on attendance issues caused by its own FMLA violation........ 17

A. Same Decision Defense........ 18

B. Negative Factor Test ........ 25

C. Conclusion........ 28

III. The court wrongly denied Hannah lost wages and benefits from the Cyber position........ 28

CONCLUSION ........................................................................................32

REQUEST FOR ORAL ARGUMENT ........................................................32

CERTIFICATE OF COMPLIANCE ......................................................33

## TABLE OF AUTHORITIES

| CASES | Page(s) |
|---|---|
| *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422 (4th Cir. 2015) | 18 |
| *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305 (4th Cir. 2001) | 11 |
| *Brandt v. City of Cedar Falls*, No. 21-2537, 2022 U.S. App. LEXIS 16309 (8th Cir. June 14, 2022) | 14 |
| *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001) | 22, 25, 27 |
| *Branham v. Delta Airlines*, 678 F. App'x 702 (10th Cir. 2017) | 21 |
| *Cianci v. Pettibone Corp., Beardsley Piper Div.*, 152 F.3d 723 (7th Cir. 1998) | 14 |
| *Cobb v. Cont. Transp., Inc.*, 452 F.3d 543 (6th Cir. 2006) | 13, 16, 22 |
| *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009 (2020) | 20, 30 |
| *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 n.9 (3d Cir. 2004) | 25 |
| *Dillon v. Md.-Nat'l Cap. Park & Plan. Comm'n*, No. WGC-04-994, 2006 U.S. Dist. LEXIS 97091 (D. Md. Oct. 27, 2006) | 21 |
| *Edgar v. JAC Prods.*, 443 F.3d 501 (6th Cir. 2006) | 20 |
| *Elliott v. Rollins*, No. 5:11-CV-693-FL, 2013 U.S. Dist. LEXIS 140926 (E.D.N.C. Sept. 13, 2013) | 21-22 |

| | |
|---|---|
| *Estrada v. Cypress Semiconductor (Minnesota) Inc.*, 616 F.3d 866 (8th Cir. 2010) | 21 |
| *Everett v. Pitt Cnty. Bd. of Educ.*, 678 F.3d 281 (4th Cir. 2012) | 11 |
| *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274 (11th Cir. 1999) | 14 |
| *Grant Thornton, LLP v. FDIC*, 435 F. App'x 188 (4th Cir. 2011) | 9, 12 |
| *Guzman v. Brown Cty.*, 884 F.3d 633 (7th Cir. 2018) | 20 |
| *Fry v. Rand Constr. Corp.*, 964 F.3d 239 (4th Cir. 2020) | 18, 19, 26 |
| *Goodine v. Bosch*, Civ. A. No. 8:19-cv-1701-DCC-KFM, 2021 U.S. Dist. LEXIS 183357 (D.S.C. Jan. 19, 2021). | 19 |
| *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208 (4th Cir. 2016) | 15 |
| *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151 (1st Cir. 1998) | 12 |
| *Holloway v. United States*, 526 U.S. 1 (1999) | 16 |
| *Hopkins v. Grant Thornton, LLP*, 529 F. App'x 1 (D.C. Cir. 2013) | 21 |
| *Laing v. Federal Express Corp.*, 703 F.3d 713 (4th Cir. 2013) | 18, 19 |
| *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261 (11th Cir. 2008) | 21 |
| *Miller v. Pilgrim's Pride Corp.*, Civ. A. No. 5:05CV00064, 2008 U.S. Dist. LEXIS 3305 (W.D. Va. Jan. 16, 2008) | 21 |

| | |
|---|---|
| *Montgomery v. Maryland*, 72 F. App'x 17 (4th Cir. 2003) | 13, 14, 15 |
| *Nero v. Indus. Molding Corp.*, 167 F.3d 921 (5th Cir. 1999) | 14 |
| *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721 (2003) | 13, 14 |
| *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) | 20 |
| *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002) | *passim* |
| *Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections*, 827 F.3d 333 (4th Cir. 2016) | 11 |
| *Richardson v. Univ. of Md. Shore Reg'l Health, Inc.*, No. 1:21-cv-00669, 2021 U.S. Dist. LEXIS 244181 (D. Md. Dec. 22, 2021). | 22, 27 |
| *Saulter v. Detroit Area Agency on Aging*, 562 F. App'x 346 (6th Cir. 2014) | 20-21 |
| *Sanders v. City of Newport*, 657 F.3d 772 (9th Cir. 2011) | 21 |
| *Sharif v. United Airlines, Inc.*, 841 F.3d 199 (4th Cir. 2016) | 12, 19, 22 |
| *Sheeks v. CNH Indus. LLC*, No. 8:21-CV-28, 2022 U.S. Dist. LEXIS 86261 (D. Neb. May 12, 2022) | 24, 29 |
| *Shirley v. Precision Castparts Corp.*, 726 F.3d 675 (5th Cir. 2013) | 20 |
| *Simmons v. William B. Henghold, M.D., P.A.*, 803 F. App'x 356 (11th Cir. 2020) | 21 |
| *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161 (2d Cir. 2006) | 20 |

| Case | Page |
|---|---|
| *Smith v. Caesars Balt. Mgmt. Co., LLC.*, No. ELH-17-3014, 2019 U.S. Dist. LEXIS 134148 (D. Md. Aug. 9, 2019) | 27 |
| *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002) | 21 |
| *Sparenberg v. Eagle Alliance*, No. JFM-14-1667, 2015 U.S. Dist. LEXIS 140368, 2015 WL 6122809 (D. Md. Oct. 15, 2015) | 31 |
| *Throneberry v. McGehee Desha Cty. Hosp.*, 403 F.3d 972 (8th Cir. 2005) | 20, 22, 29 |
| *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885 (4th Cir. 1992) | 15 |
| *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) | 19 |
| *Va. Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645 (4th Cir. 2017) | 11 |
| *Wagner v. Dillard Dep't Stores, Inc.*, 17 F. App'x 141 (4th Cir. 2001) | 25 |
| *Walker v. UPS*, 240 F.3d 1268 (10th Cir. 2001) | 14 |
| *Wallace v. FedEx Corp.*, 764 F.3d 571 (6th Cir. 2014) | 22, 27 |
| *Wysong v. Dow Chem. Co.*, 503 F.3d 441 (6th Cir. 2007) | 25 |
| *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541 (4th Cir. 2006) | 12, 18, 19 |

| **STATUTORY AND REGULATORY PROVISIONS** | **Page(s)** |
|---|---|
| 29 C.F.R. § 825.220(b) | *passim* |
| 29 C.F.R. § 825.220(c) | 25, 26 |
| 29 C.F.R. § 825.300 | 23 |
| 29 C.F.R. § 825.300(e) | 16 |
| 28 U.S.C. § 1291 | 1 |
| 28 U.S.C. § 1331 | 1 |
| 28 U.S.C. § 2402 | 7 |
| 28 U.S.C. § 2615 | 13 |
| 28 U.S.C. § 2615(a)(1) | 19, 24, 26 |
| 29 U.S.C. § 2617(a) | 22 |
| 29 U.S.C. § 2617(a)(1)(A)(I) | *passim* |
| 29 U.S.C. § 2654 | 26 |
| 73 Fed. Reg. 67986 | 26 |
| **OTHER AUTHORITIES** | **Page(s)** |
| Black's Law Dictionary (6th ed. 1990)). | 15 |

## STATEMENT OF JURISDICTION

The Eastern District of Virginia Federal Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the case involves a federal question.  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

After a bench trial, the trial court entered its Final Order and Judgment on April 4, 2022. JA337-338.  Appellant timely filed her Notice of Appeal on May 3, 2022.  JA339-340.

## STATEMENT OF ISSUES

1) Whether wages and benefits lost from a job denied an employee, by reason of the employer's FMLA Interference, constitutes consequential damages.

2) Whether the trial court erred in placing the burden of proof as to causation of harm solely on the plaintiff when it was proven that the defendant employer considered attendance issues caused by its own FMLA interference violation in the hiring decision.

3) Whether plaintiff was entitled to lost wages and benefits due to her non-selection for the Cyber position.

## STATEMENT OF THE CASE

Hannah was hired by ODNI as a staff reserve five-year term employee in March 2011; she served as a GS-15 Senior Systems Analyst until her term ended on March 27, 2016.  JA297-298.  Throughout her employment with ODNI,

Hannah received overall outstanding and excellent performance evaluations. JA53: 11-22.

Because of Hannah's steadily outstanding performance, Stephanie O'Sullivan, the Principal Deputy Director on National Intelligence ("PDDNI"), chose her to lead the intelligence community in their coordinated responses to the [Edward] Snowden unauthorized disclosures ("Snowden Disclosures"). JA298. This high-pressure, high-profile assignment lasted from November 2013 through January 2015, and by all accounts, Hannah's leadership, poise, and performance were impeccable. *Id*.

While working on the Snowden Disclosures assignment, Hannah was on a "maxi-flex" schedule that allowed her to choose her working hours so long as she completed her assignments on time. JA298. This continued after the assignment ended, with no initial concerns raised by her supervisors; Hannah was even asked to fill in as acting chief of her division, Operations Analyses ("OA"), during the week of February 20th. JA57-58, JA78: 7-12. It was not until March 19, 2015, that Hannah was given set expectations for working hours. JA55: 9-14; *see also* JA61: 20-23.

During this period, Hannah was undergoing continued treatment for Major Depressive Disorder ("depression"), with which she had been diagnosed in 2011, but had managed well up until early 2015. JA299. Due to several reasons, in early

2015, Hannah began experiencing acute bouts of depression. *Id.*; *see also* JA109-110.

Hannah's long-time medical care providers recommended that she take four weeks of leave to combat her depression, which, on April 9, 2015, she orally requested to begin as soon as possible. JA302-303. This leave obviously should have been permitted under the Family and Medical Leave Act ("FMLA" or "Act"). JA214: 15-17. However, the request was wrongly denied by her supervisors. *Id.* This began a period of struggle, in which Hannah attempted to get her leave approved, but was consistently met with Defendant's unclear instructions and denial of her request. JA303-305. This flagrant FMLA interference led to Hannah being tardy eight days and calling in last minute absences four days from April 9 through April 30, 2015. JA232. This equated to an attendance issue on **12 of the 16 working days** in the period and cost Hannah 45 hours of sick leave. *Id.*; *see also* JA39-40, ¶¶ 5–7. After hearing Hannah's evidence, the trial court astutely quipped that "had [Hannah] taken [the needed time off] in early April, the most egregious forms of her poor behavior would not have occurred." JA172: 7-9.

Defendant finally granted Hannah's leave request on May 1, 2015, and her leave began on May 5, 2015. JA303-305. Despite having knowledge of the FMLA-qualified disability and need for leave, ODNI ***never*** notified Hannah of her right to take FMLA leave. JA40, JA305, JA312. Additionally, though it was against

ODNI's FMLA policy, Hannah was unable to use her sick leave for the May leave, except on days she was seeing her medical providers for continued treatment, and instead she had to take annual leave. *Id.*; *see also* JA131.

After returning from leave, Hannah's performance significantly improved and her attendance was nearly flawless. JA305. On June 9, soon after returning from leave, Hannah interviewed for a permanent ODNI position: Program Mission Manager Cyber ("Cyber"). *Id*. The members of the interview panel unanimously selected Hannah as the most qualified candidate for the position on the same day. *Id*. Their unanimous recommendation was provided on June 17, 2015 to Mark Ewing, but then her application stalled for several weeks pending his determination, which was an irregular occurrence. *Id.*; *see also* JA223-225. In late June, Hannah was informed that she had been the candidate chosen for the position by the Interview Panel. JA120: 8-10.

On July 7, 2015, however, ODNI HR informed Hannah that she was not selected for the Cyber position, based solely on Mr. Ewing's decision. JA121, JA308. In fact, when later discussing her interview with a panel member, the member noted that she had no constructive feedback for Hannah, as she "interview[ed] very, very well." JA259.

In making his decision, Mr. Ewing admitted that he was "considering [Hannah's] erratic attendance…mid-January **through April**." JA306-307; *see also*

JA86: 5-12 (emphasis added). This was similar to what he had stated in a June 30 email to Ms. O'Sullivan, seeking her insight into Hannah's hiring decision, stating, "he is concerned about hiring her…[because] her **recent performance** is not consistent with a potentially good employee." JA289, JA306-307 (emphasis added). Mr. Ewing was provided incorrect information that Hannah did not "have a medical problem."[1] *Id.*[2]

Laboring under this false belief, Mr. Ewing was obviously incensed that after Hannah had been given a schedule by her supervisors on March 19th and was sent to counseling with the Employee Assistance Program on April 9th that "her <u>late attendance at work has continued</u>." JA289-290 (emphasis in original); *see generally* JA101-103. When pointed out that the only line in the whole email that was emphasized was the previous line and that "this is really what made you upset; isn't that fair?" JA101: 12-17. After several pretextual rationalizations, he admitted that was "correct." *Id.* at JA101: 18-19. Mr. Ewing's view that Hannah was flaunting her supervisors and the attendance policy in April is primarily what made him find that "she is a disciplinary problem" and recommend against hiring Hannah on June 30, 2015. JA289-290.

---

[1] Mr. Ewing, a life-long intelligence agent, was very "careful" with his words and was caught telling several half-truths (if not full lies); one such mis-truth was noted by the Court. JA307-308.

[2] Notably Mr. Ewing's alleged source, Hannah's supervisor Art Z, flatly denied Mr. Ewing's version of the story. *See*, JA83: 7-17, JA101: 10-11 (Ewing: "I relied on information that Art provided me. There's no question on that."), JA182: 16 - JA183: 6 (Art's denial)).

Despite Mr. Ewing's disparaging June 30 email, Ms. O'Sullivan still considered Hannah a "a terrific employee who did great work," and would have pushed to hire Hannah if she had just seen "two to four weeks" of improved performance after Hannah returned from her leave. JA146: 19-20, JA153: 21-23. As it was, in late June, she was not sure if Hannah had completed that stretch, so she did not push Mr. Ewing to make the hire. JA153: 12-16. This is consistent with Mr. Ewing's testimony that "[i]f we had seen some pattern of [] positive conduct after the 9th of April, [considering her for the Cyber position] would have been a real possibility." JA51: 13-15.

As it was, Hannah was denied the Cyber position and, unable to find employment within ODNI or related agencies, finished out her term at ODNI on March 27, 2016 as a high performer. JA176. Unemployed, she then pursued a career in real estate. JA308-309. Hannah sought, as lost wage damages, the difference in wages from the Cyber position and her actual wages earned in her real estate career after March of 2016. JA295.

**Procedural History**

Hannah filed her Complaint on August 12, 2016, in the United States District Court for the Eastern District of Virginia**,** seeking relief under the Rehabilitation Act and the FMLA. Tr. Dkt. No. 1. The trial court initially granted Defendant's Motion for Summary Judgment on all Counts and entered a corresponding Order of final

judgment on July 27, 2017.  Tr. Dkt. Nos. 74, 75.  Hannah appealed that ruling on August 15, 2017.  Tr. Dkt. No. 78.

On February 19, 2019, this Court entered a published Opinion affirming the lower court's order on the Rehabilitation Act and FMLA Retaliation counts, but remanding the FMLA interference claim to proceed.  Tr. Dkt. No. 84, 85.  Hannah petitioned the Supreme Court for a Writ of Certiorari, which was denied on March 9, 2020.  *See* Supreme Ct. Case No. 19-549.

Upon returning to the District Court, the case was tried on March 1 and 2 of 2021 as a bench trial.  Trial Dkt. Nos. 126, 127 (28 U.S.C. § 2402, mandating bench trial).  At the conclusion of the trial the judge denied closing arguments stating "it's obvious that there is definitely liability because there was clearly a violation of the FMLA. I mean, there's just no question about it."   JA214: 15-17.  The court specifically found that Hannah had "put defendant on sufficient notice that she was requesting leave guaranteed by the FMLA and that defendant did not respond by making plaintiff aware of her FMLA rights and promptly allowing her to take leave." JA312.  The Court went so far as to state the government owed Hannah an apology and that she was "not satisfied that… [trying to get Hannah another job] was done with as much good faith as it should have been done."  JA218: 10-11.

The court instructed the parties to submit post-trial briefs to address damages.  *Id*.  When Plaintiff's Counsel asked for purposes of clarity: "We

shouldn't talk about liability at all in the briefing?" JA219: 3-4. The court responded "I am giving that to you right now…just address damages – or remedy. I mean the full range of remedies." *Id.* at JA219: 5-6, 23-24. On the issue of Cyber damages, the trial judge stated "[o]bviously, the big ticket item here is whether or not the plaintiff did make appropriate efforts to mitigate her damages." JA216: 15-17. In her closing remarks, the judge never mentioned that proximate cause for the Cyber position damages had not been proven or given Hannah any reason to believe there was any question remaining as to the issue of causation of harm. JA214-220.

On December 30, 2021, the judge issued her Memorandum Opinion awarding Hannah damages for the annual leave disallowed in May of 2015 but denying liability on the Cyber position. JA296. Despite her closing remarks at trial, the judge found Hannah had "not carried her burden of showing that defendant's FMLA interference proximately caused her non-selection for the Cyber position." JA315-316. To arrive at this conclusion, the court held that FMLA "losses must be direct" and noted "the Fourth Circuit does not allow consequential damages in FMLA cases." JA315. Applying a consequential damages analysis to the Cyber position, and asking whether there was an '"intervening and superseding cause' that broke the chain of causation," the court found "it would be too speculative to conclude that Ewing would have selected Hannah for the Cyber position if she had been allowed

to take leave on April 9." JA315, JA318 (quoting, *Grant Thornton, LLP v. FDIC*, 435 F. App'x 188, 196–98 (4th Cir. 2011)).

On January 27, 2022, Hannah filed a Motion for Reconsideration challenging the legal standard of causation the court applied to the Cyber damages. Tr. Dkt. No. 174. The Motion was denied on March 18, 2022. JA324. In her Opinion denying the Motion, Judge Brinkema affirmed that she believed the burden was solely on Hannah to prove causation of the Cyber damages, repeatedly referencing that the wages needed to be a "direct" result of the FMLA interference causation for damages. JA328-329, JA331, JA333. On May 3, 2022, Hannah filed this Appeal. JA339-340.

## SUMMARY OF ARGUMENT

Appellant raises three cascading arguments, as follows: 1) the lower court wrongly presumed that lost wage damages attributable to a job Hannah was denied were consequential damages; 2) in conducting its review of these damages, the court wrongly misallocated the burden, placing it entirely on Hannah to prove the proximate cause of the damages was ODNI's FMLA violation; and 3) applying virtually any judicially-recognized standard of proof this Court should hold that Hannah proved ODNI was liable for the Cyber position lost wages.

On the first issue, the statutory text and Supreme Court precedents make clear that a court should not apply common law consequential damage principles to

determine FMLA interference damages expressly permitted by the Act. The lower court, which seemed to be confused by this Court's (and others) previous use of the term "consequential damages" in the FMLA context to refer to non-monetary damages, wrongly strayed into examining intervening and superseding causes, eventually requiring Hannah to prove she lost wages as a "direct result" of ODNI's FMLA violation. Instead, Hannah should merely have needed to prove that she lost "compensation and benefits" "by reason of [ODNI's FMLA] violation." 29 C.F.R. § 825.220(b).

As to the applicable proof-standard, Hannah's burden should have ended once she had proven that ODNI relied on its decision not to hire her upon attendance issues caused by its FMLA violation. Under all of the standards applied by the other Circuit Courts to this situation, Hannah would have met her burden of proof as to causation of harm. Having done so, if that did not end the inquiry in Hannah's favor (under the "negative factor test"), then ODNI should have been forced to shoulder the burden of proving it would have made the same decision regardless of its FMLA violation (the "same decision rule"). As it was, the lower court erred in making Hannah alone try to prove that ODNI would have hired but for its FMLA violation.

Finally, applying any of the lower burden standards, the evidence at trial made clear that ODNI's FMLA violation caused Hannah to lose wages and benefits related to the Cyber position. There being no question of fact remaining on the issue, this

Court should rule for Hannah and find ODNI liable for Hannah's loss of the Cyber position and remand the case solely for a determination of damages, particularly as to questions of mitigation.

## ARGUMENT

### Standard of Review

This Court applies a *de novo* standard of review to legal conclusions resulting from a bench trial judgment. *See Va. Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645, 654 (4th Cir. 2017); *see also Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections*, 827 F.3d 333, 340 (4th Cir. 2016). Similarly, a district court's allocation of the burden of proof is reviewed *de novo*. *Everett v. Pitt Cnty. Bd. of Educ.*, 678 F.3d 281, 288 (4th Cir. 2012) (citing, *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 379 (4th Cir. 2001)) (en banc). Accordingly, all issues raised in this appeal should be reviewed *de novo*.

### Discussion

**I. The Court erred in finding that wages and benefits lost because of ODNI's decision not to hire Hannah for the Cyber position were consequential damages.**

According to the plain language of the Act, wages lost by reason of an FMLA violation do not constitute impermissible consequential damages. *See* 29 U.S.C. § 2617(a)(1)(A)(I). Thus, when the trial court found that Hannah's Cyber position "wages and benefits represent consequential damages" the trial court erred. JA315.

The legal standard applied by the lower court to the Cyber position damages contained two major errors. First, the court used a common law consequential damages' analysis to determine if the Cyber position lost wages were proximately caused by the FMLA violation. *Id.* (examining whether there was an '"intervening and superseding cause' that broke the chain of causation between defendant's interference and plaintiffs non-selection") (quoting, *Grant Thornton, LLP*, 435 F. App'x at 196–98). Second, the court required proof that the wages were lost as a "direct result" of the FMLA violation, which is an improperly high burden. *Id*. Both of these holdings were plain error for the reasons stated below.

Claims of FMLA interference arise under 29 U.S.C. § 2615(a)(1), which states that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Rights under "§ 2615(a)(1), are prescriptive, 'setting substantive floors for conduct by employers, and creating entitlements for employees.'" *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006) (quoting, *Hodgens v. Gen. Dynamics Corp*., 144 F.3d 151, 159 (1st Cir. 1998)). Accordingly, "a plaintiff seeking redress for employer interference with an entitlement is only required to show that he or she qualified for the right that was denied." *Sharif v. United Airlines, Inc*., 841 F.3d 199, 203 (4th Cir. 2016) (noting employer intent is irrelevant for interference claim).

The FMLA is explicit that "[a]ny employer who violates [29 USCS § 2615] **shall be liable** to any eligible employee affected [] **for** damages equal to [] the amount of [] **<u>any</u> wages**, salary, employment benefits, or other compensation denied or **lost to such employee by reason of the violation**." 29 U.S.C. § 2617(a)(1)(A)(I) (emphases added). Interpreting this language, the Supreme Court has ruled both that "[t]he damages recoverable [under the FMLA] are strictly defined" (*Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 739–40 (2003)) and FMLA "violators **<u>are</u>** subject to consequential damages." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86–87, 91 (2002) (emphasis added) (further clarifying damages under the FMLA *require* "a showing of consequential harm"). The Supreme Court has also determined that the FMLA is "remedial legislation" (*Nev. Dep't of Hum. Res.*, 538 U.S. at 734), and thus the Act "should be construed broadly to extend coverage" for the types of damages listed in the Act. *Cobb v. Cont. Transp., Inc.*, 452 F.3d 543, 559 (6th Cir. 2006).

While several Circuit Courts have found that the FMLA permits consequential damages, others, including this Circuit in an unpublished decision, have found that "consequential damages [are] not covered under the [FMLA]." *Montgomery v. Maryland*, 72 F. App'x 17, 18–20 (4th Cir. 2003). Upon examination, however, it becomes clear that the latter courts are not flouting the higher Court's rulings but are simply using the word "consequential" to mean

something altogether different. These cases, including *Montgomery*, are focused on claims of non-monetary damages; those damages that are less concrete, and more importantly, absent from the text of the FMLA. *See, e.g.*, *Brandt v. City of Cedar Falls*, No. 21-2537, 2022 U.S. App. LEXIS 16309, at *13–14 (8th Cir. June 14, 2022) (noting as disallowed nominal and emotional distress damages); *Walker v. UPS*, 240 F.3d 1268, 1277–78 (10th Cir. 2001) (ruling FMLA is "expressly limited to lost compensation and other actual monetary losses"); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999); *Cianci v. Pettibone Corp., Beardsley Piper Div.*, 152 F.3d 723, 728–29 (7th Cir. 1998) (finding plaintiff "did not suffer any diminution of income, and … incurred no costs as a result of the alleged violation"); *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999) (ruling that "out-of-pocket expenses, which included moving and job search expenses," are not compensation for employment). In *Montgomery*, for instance, this court denied nonpecuniary damages as consequential damages on the basis that the plaintiff "alleged no lost wages or cost of care, focusing instead on emotional distress." 72 F. App'x at 19. In using the term "consequential damages," these courts were simply trying to denote that FMLA damages must be of the *type* "strictly defined" by the Act "and measured by actual monetary losses." *Nev. Dep't of Hum. Res.*, 538 U.S. at 739–40. The courts were not, and could not have been (without contradicting *Ragsdale*), intending to require a heightened analysis or

outright prohibition of lost wage claims resulting from a "consequential harm." *Ragsdale*, 535 U.S. at 91.

Likely because of the semantic confusion regarding this issue, the lower court extended the damages language in *Montgomery* into a whole new requirement of proof for lost wage claims. JA314-318. Referencing the common law definition of consequential damages - "[s]uch damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act,'"[3] the Court applied this definition to the lost wages at issue in the case. *Id*. The court found, *inter alia*, "plaintiff's non-selection for the Cyber position was a result of many intervening factors"[4] and even adopted the Appellee's argument that to prevail the FMLA violation had to be the "principal factor." JA316. Yet, no but-for cause analysis requires a plaintiff to show that the violation was *the* sole or principal cause, but merely that "the protected activity was *a* but-for cause of [the adverse action]." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 218 (4th Cir. 2016) (emphasis added) (calling "court's reasoning [] a fallacy").

Compounding its error, the district court also required Hannah to prove the lost wage damages were a "direct result" of the FMLA interference. *Id*. ("The losses

---

[3] JA315 (quoting, *Trimed, Inc. v. Sherwood Med. Co*., 977 F.2d 885, 893 n.7 (4th Cir. 1992) (quoting Black's Law Dictionary 390 (6th ed. 1990)).

[4] This is an ironic finding as a factual matter, because basically the only "intervening factor" was Mr. Ewing's view of Hannah *based* upon her attendance issues, which includes the FMLA interference.

must be direct."); JA328, JA331-333.  To the contrary, 29 U.S.C. § 2617(a)(1)(A)(I) contains no "direct result" limitation for wage claims; that language is found solely in 2617(a)(1)(A)(II), applying to "actual monetary losses sustained."  The lower court's requirement that lost wages be a "direct result" of the FMLA violation is a patently incorrect reading of the statutory language and intended interpretative approach for remedial legislation.  *Holloway v. United States*, 526 U.S. 1, 6 (1999); *Cobb*, 452 F.3d at 559 ("exclusions or exceptions should be construed narrowly").

In contrast to the court's complicated, multi-step approach, Hannah should simply have been required to prove that in the denial of the Cyber position she lost "compensation and benefits" "by reason of the [FMLA] violation."  29 C.F.R. § 825.220(b) (implementing 29 U.S.C. § 2617(a)(1)(A)(I)); *see also*, § 825.300(e) (Employer notice requirements).  Something she easily did under the correct burden of proof.[5]  No strict consequential harm analysis or "direct result" proof-standard should have been required; in so doing, the court erred.

In the end, the court's incorrect recitation and application of the law caused it to be the first in the Nation[6] to hold that actual *lost wages* in an FMLA interference context could be, and were in fact, disallowed consequential damages.  *Id*.  And, the decision flatly conflicts with the Supreme Court's holding in *Ragsdale* that damages

---

[5] See below for a full discussion of the facts of this case and proper proof standard.

[6] After extensive research Appellant can find no other case that has made a similar finding.

under the FMLA actually require "a showing of consequential harm." 535 U.S. at 91.

As a matter of law, therefore, the court erred in its ruling that lost wages from the non-selection of the Cyber position were impermissible consequential damages. The error was not harmless and this case should be remanded for an examination under the correct legal standard.

**II. The trial court erred in placing the burden of proof as to causation solely on Hannah once she had proven that ODNI made its hiring decision, at least in part, on attendance issues caused by its own FMLA violation.**

The lower court wrongly placed the burden solely on Hannah to prove that ODNI would not have hired her for the Cyber position regardless of its FMLA violation. Because the court applied the incorrect burden, it reached the wrong conclusion, and the decision should be reversed.

Specifically, even though it recognized ODNI relied on attendance issues caused by its own FMLA interference in its Cyber hiring decision (JA316-317), the lower court still held that the plaintiff solely carried the burden of proving causation of her damages. JA328 ("…the Court made clear before and during trial that plaintiff had the burden…to prove that her non-selection for the Cyber Position was caused by defendant's FMLA interference"). This Court has not squarely addressed this issue, but virtually all the other Circuits to address the matter, and numerous district courts in this Circuit, disagree with the trial court's approach. Instead, as shown

below, these other courts have prudently applied a lower burden of proof on plaintiffs, and such an approach should be adopted in this Circuit.

**A. Same Decision Defense**

While this Court has held "[t]o make out an 'interference' claim under the FMLA, an employee must [] demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm" (*Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 426–27 (4th Cir. 2015)), the Court has never expounded upon the causation required to be proven for the third element. Specifically, no case has decided the proper standard to apply when an employer's interference was *a* cause, but potentially not *the sole* cause, of the harm. *Yashenko*, 446 F.3d at 547–49 (leaving unresolved burden determination in 29 C.F.R. § 825.216(a) job restoration case). The closest this Court has come to deciding the issue was in the recent case *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020) (emphasis added). There, the panel stated, after discussing the differences between interference and retaliation claims, that "*both* contexts…we evaluate under the framework established for Title VII cases in McDonnell Douglas." *Id*. (emphasis added) (citing, *Laing v. Federal Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) and *Yashenko*, 446 F.3d at 550–51). But, as articulated recently by one district court, this dicta seems to have been mistaken or at least intentionally limited to the

facts of the particular case.[7]  *Goodine v. Bosch*, Civ. A, No. 8:19-cv-1701-DCC-KFM, 2021 U.S. Dist. LEXIS 183357, at *11 n.6 (D.S.C. 2021).  This is because the *Fry* Court was addressing only an FMLA retaliation case and the cases cited therein, *Laing* and *Yashenko*, only applied the McDonnell Douglas standard in the retaliation context.  *Id*.  Moreover, the Court's simultaneous recognition that "[o]ur cases suggest that [under] § 2615(a)(1)…the employer's intent is irrelevant"[8] alongside a finding that a "plaintiff [] produce…evidence of retaliatory animus," is wholly inconsistent and patently nonsensical.  *Id*. at 244, 246 n.3 (citing, *Sharif*, 841 F.3d at 203).  As it is, therefore, the burden of proof for causation appears to be undecided by this Court.

Although the Supreme Court has not weighed in on the issue in FMLA interference cases, it has found in the similar context of Title VII discrimination cases[9] that "plaintiff doesn't have to prove but-for causation; instead, it's enough to

---

[7] The case could have been limited to its facts because, as the Court noted, "Fry does not contend that the district court erred in using the McDonnell Douglas framework."  964 F.3d at 246, n.4.

[8] The Court also noted the plaintiff "does not rely on those cases to argue that Rand's intent is irrelevant to her claim."  964 F.3d at 246 n.3.  Accordingly, the *Fry* Court did not address the arguments raised in this case.

[9] The Court distinguished Title VII discrimination cases from retaliation cases, finding the McDonnell Douglas standard applies to the latter and requires a plaintiff to prove employer animus as the but-for cause.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013) (distinguishing "status-based discrimination," which is similar to FMLA interference claims, and "Title VII retaliation," which is virtually identical to FMLA retaliation claims).

show that discrimination was a motivating factor in the defendant's decision." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1017 (2020) (citing, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 249–50 (1989) (ultimately superseded by statute)). In that context, "[o]nce a plaintiff meets this lesser standard…the defendant may defeat liability by establishing that it would have made the **same decision** even if it had not taken the plaintiff's race (or other protected trait) into account." *Id*. (emphasis added). As the Court noted, this would have the effect of "hand[ing the burden] to the defendant as an affirmative defense." *Id*.

Likely borrowing from the Court's ruling in *Price Waterhouse*, the Circuit Courts considering the burden of proof when an "employer [] interferes with an employee's FMLA rights" have found that the employer will be liable unless "**the employer can prove** it would have made **the same decision** had the employee not exercised the employee's FMLA rights." *Throneberry v. McGehee Desha Cty. Hosp*., 403 F.3d 972, 977 (8th Cir. 2005) (emphases added); *see also, Sista v. CDC Ixis N. Am., Inc*., 445 F.3d 161, 173 (2d Cir. 2006); *Shirley v. Precision Castparts Corp*., 726 F.3d 675, 682 (5th Cir. 2013); *Edgar v. JAC Prods*., 443 F.3d 501, 507–08 (6th Cir. 2006)[10]; *Guzman v. Brown Cty.*, 884 F.3d 633, 640 (7th Cir. 2018);

[10] The 6th Circuit appears to be the only Circuit that might also apply the McDonnell Douglas paradigm to some interference claims; a decision that has been roundly criticized by numerous courts, including a panel within the Circuit. *Saulter v.*

*Estrada v. Cypress Semiconductor (Minnesota) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010); *Branham v. Delta Airlines*, 678 F. App'x 702, 705 (10th Cir. 2017)[11] ("[Employer] carried its burden of proving that Ms. Branham was dismissed for reasons unrelated to any FMLA leave....") (citing, *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002)); *Simmons v. William B. Henghold, M.D., P.A.*, 803 F. App'x 356, 364 (11th Cir. 2020) (following, *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008)); *Sanders v. City of Newport*, 657 F.3d 772, 780 (9th Cir. 2011); *Hopkins v. Grant Thornton, LLP*, 529 F. App'x 1, 3 (D.C. Cir. 2013). It appears a majority of the lower courts in this Circuit have also adopted the "same decision" standard. *See, e.g.*, *Miller v. Pilgrim's Pride Corp.*, Civ. A. No. 5:05CV00064, 2008 U.S. Dist. LEXIS 3305, at *3 (W.D. Va. Jan. 16, 2008); *Dillon v. Md.-Nat'l Cap. Park & Plan. Comm'n*, No. WGC-04-994, 2006 U.S. Dist. LEXIS 97091, at *78-79 (D. Md. Oct. 27, 2006) ("an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove that it would have made the same decision."); *Elliott v. Rollins*, No. 5:11-

---

*Detroit Area Agency on Aging*, 562 F. App'x 346, 362 n.1 (6th Cir. 2014) ("…*Donald* wrongly concluded, in our view, that the Sixth Circuit applies the McDonnell Douglas burden-shifting framework to interference claims under the FMLA.…we would be inclined to [join] the [holdings of the] Third, Eighth, Ninth, Tenth, and Eleventh Circuits…")

[11] Some Circuits, like the 6th and 10th, refer to "same decision" as "unrelated reason" rule, because an employer must prove adverse action was due to a *reason unrelated* to FMLA violation. The two standards seem otherwise identical.

CV-693-FL, 2013 U.S. Dist. LEXIS 140926, at *33–35 (E.D.N.C. Sept. 13, 2013); *Richardson v. Univ. of Md. Shore Reg'l Health, Inc.*, No. 1:21-cv-00669, 2021 U.S. Dist. LEXIS 244181, at *23–24 (D. Md. Dec. 22, 2021).

As a matter of policy, placing the burden on the employee to prove what the employer would or would not have done but for the employer's interference makes little sense. Everything about the text and intent of the Act argues for the party having committed the prescriptive harm to bear the burden of proving why it should escape providing a remedy. 29 U.S.C. § 2617(a); *Cobb*, 452 F.3d at 559. This is not to say that FMLA interference violations are strict-liability claims; they are not. *See*, *Throneberry*, 403 F.3d at 977. At the same time, since intent is not a consideration, surviving a claim for damages should certainly be difficult for an employer. *Sharif*, 841 F.3d at 199, 203. For this reason, several courts have required even less proof by the employee than the burden-shifting paradigm requires. *See*, argument *infra*, *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1126 (9th Cir. 2001); *Wallace v. FedEx Corp.*, 764 F.3d 571, 590 (6th Cir. 2014) ("…when the absences and cause for discharge relate directly to the FMLA leave and the company's failure to give notice, as they do in this case, there is no legitimate and independent reason for dismissal.")

Applying the "same decision" rule to this case, it is obvious that Hannah should have been awarded lost wages related to the denied Cyber position. This case

presents a gross violation of an employer's duty to comply with the FMLA. JA214. "Interfering with the exercise of an employee's rights would include [] refusing to authorize FMLA leave," and there is not even a dispute in this case that this occurred. 29 C.F.R. § 825.220(b); *see also*, 29 C.F.R. § 825.300 (failing to provide notice is also a *per se* violation of FMLA). The trial court expressly found "the evidence establishes that plaintiff put defendant on sufficient notice that she was requesting leave guaranteed by the FMLA and that defendant did not respond by making plaintiff aware of her FMLA rights and promptly allowing her to take leave…." JA312.

In sum, Hannah requested what should have been FMLA leave on April 9, 2015. JA113-114; *see also* JA302-303. She was ***never*** provided notice of her FMLA rights, and she was directly denied the ability to take doctor prescribed leave until May 5, 2015. JA302-303, JA305. It turned out that no one in Hannah's supervisory chain at ODNI knew anything about FMLA nor understood Hannah's leave was mandated by FMLA. JA313. Accordingly, ODNI acted obliviously to the law. *Id.*

Because of ODNI's flagrant FMLA violation, between April 9th and May 5th Hannah attempted to report to work and ended up doing so late 8 days and missing 4 days. JA232. ODNI ***directly caused these attendance issues*** by its FMLA

violations. JA312. Accordingly, all of these tardies and absences should have been recognized as interfered-with leave in violation of 29 U.S.C. § 2615(a)(1).

Nonetheless, the testimony by the hiring authority Mark Ewing made clear that he took no effort to differentiate the leave (or "attendance issues") he considered in making his hiring decision. JA85: 17 - JA86: 4. And in fact, he admitted that he ***did consider*** Hannah's attendance issues "through April;" meaning, by his own admission, his non-hire decision was based in part on FMLA interfered-with leave. JA86: 5-12 ("I was considering her erratic attendance… mid-January through April"); *see also* JA289-290 ("her late attendance at work has continued" after referral to EAP on April 9th) (emphasis in original). ODNI's consideration of these April attendance issues in the Cyber hiring decision patently violates 29 U.S.C. § 2617(a)(1)(A)(I). *See*, *Sheeks v. CNH Indus. LLC*, No. 8:21-CV-28, 2022 U.S. Dist. LEXIS 86261, at *21-22 (D. Neb. May 12, 2022) (considering attendance issues occurring during FMLA entitled leave violates the Act).

So, to close the loop, the court found ODNI had interfered with Hannah's leave on or about April 9th, the violation directly led to Hannah's attendance issues during that period, ODNI considered these interference-induced attendance issues in the decision not to hire Hannah for the Cyber position, the admitted reason Hannah was denied the Cyber job was due to her attendance issues, and Hannah suffered lost wages due to the loss of the Cyber position. Under the clear text of 29 C.F.R.

§ 825.220(b), it is clear that Hannah lost "compensation and benefits" "by reason of the [FMLA] violation." *See, Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447–48 (6th Cir. 2007) (FMLA interference damages appropriate where employer's actions "set in motion an unbroken chain of events culminating in her termination"). Once Hannah had proven the decision to non-hire her was based on improperly interfered-with leave, ODNI should have been required to prove "that it would have reached the same decision absent any discrimination." *Wagner v. Dillard Dep't Stores, Inc.*, 17 F. App'x 141, 152 (4th Cir. 2001) (ADA context).

By maintaining the causation burden solely on Hannah, the court clearly erred.[12] The court's error led to Hannah being denied lost wages attributable to the Cyber position and the decision should be reversed.

**B. Negative Factor Test**

As an independent alternative, this Court could find that Hannah should prevail merely by proving that ODNI considered her April leave as a "negative factor" in its Cyber hiring decision. 29 C.F.R. § 825.220(c) (regulation containing "negative factor" language).

Though this test has been applied by some Circuit Courts in FMLA interference cases,[13] this Circuit has not yet decided whether the "negative factor

---

[12] As to ODNI failing to meet its burden of proof, see argument below.

[13] *See, e.g., Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125-26 (9th Cir. 2001); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 n.9 (3d Cir.

test," originating from 29 C.F.R. § 825.220(c), applies to FMLA interference cases. *Fry*, 964 F.3d at 244–46. However, as recently noted by the *Fry* Court, the Department of Labor's (DOL) 2008 amendment to the FMLA regulations may require this Circuit to find the text does apply to FMLA interference cases. *Id*. (citing, 73 Fed. Reg. 67986).

In amending the regulation, the DOL commented that "the Department proposed in paragraph (c) to state explicitly that the Act's prohibition on interference in 29 U.S.C. 2615(a)(1) includes claims that an employer has discriminated or retaliated against an employee for having exercised his or her FMLA rights." 73 FR at 67986 (commenting that edit was made to "strengthen or clarify the regulatory provisions implementing the Act's prohibitions"). To that end, subsection (c) now begins with the words: "The Act's **prohibition against interference prohibits** an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c), (emphasis added). Furthermore, 29 U.S.C. § 2654 gives the Secretary of Labor the power to "prescribe such regulations as are necessary to carry out" the statute, and "[a]ccordingly, the Supreme Court has recognized that '[t]he Secretary's

2004) ("The Ninth Circuit, we believe appropriately, has predicated liability in such situations on § 825.220(c) [the] section implementing § 2615(a) of the statute that, as we have noted, makes it unlawful to interfere with, restrain or deny any FMLA right.")

judgment that a particular regulation fits within this statutory constraint must be given considerable weight.'" *Wallace*, 764 F.3d at 589 (quoting, *Ragsdale*, 535 U.S. at 86).

This is important because if this Court were to find, as it seemingly should, that § 825.220(c) applies to FMLA interference claims, then the regulation would provide helpful clarity on how to apply 29 U.S.C. § 2617(a)(1)(A)(I) in Hannah's case. The regulation states in pertinent part that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Id*. Numerous courts have found that '"absences…covered by the Act,'" even if not deemed at the time as FMLA leave, are protected leave. *Smith v. Caesars Balt. Mgmt. Co., LLC.*, No. ELH-17-3014, 2019 U.S. Dist. LEXIS 134148, at *30, 39 (D. Md. Aug. 9, 2019) (quoting, *Bachelder*, 259 F.3d at 1126); *see also*, *Richardson*, 2021 U.S. Dist. LEXIS 244181, at *24 n.7.

Therefore, the utilization by ODNI of Hannah's late April "attendance issues" as a "negative factor" in the Cyber hiring decision should be determinative of ODNI's liability. *Id*. Applying the holding of *Bachelder* to this case, "[t]o prevail [Hannah would] need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to [not hire] her." 259 F.3d at 1126. This would simplify the analysis as then "[n]o scheme shifting the burden of production back and forth is required." *Id*.

Accordingly, if this Court were to find that the "negative factor" test applies in the FMLA interference context, then Hannah easily met her burden of proof and should have prevailed below. No further analysis would be needed.

### C.    Conclusion

As to this assignment of error, Hannah would ask this Court to apply the negative factor test or the same decision rule (or a similar standard) to the facts of this case. In so doing, the ruling of the lower court should be reversed and this matter remanded for further proceedings. *See*, argument *infra*.

## III.    The court wrongly denied Hannah lost wages and benefits from the Cyber position.

Assuming this Court applies the same decision rule,[14] or any other similar rule that lowers Hannah's burden of proof, Hannah should be entitled to a ruling in her favor on the Cyber lost wages. This is so because there is no evidentiary dispute as to whether ODNI considered attendance issues occurring during the FMLA interference period of April 2015 and that ODNI has no evidence it would have made the same decision regardless of its FMLA violation.

Though hamstrung by the court's disallowance of a closing argument, Hannah argued in her Motion to Reconsider that it was incumbent upon ODNI to plead and

---

[14] No further discussion is needed on the negative factor test, as it does not require any burden shifting and requires no further analysis. But to state the obvious, the request in this assignment for entry of judgment on liability would equally apply to that test as well.

prove it would have made the same hiring decision without considering attendance issues caused by *its* FMLA interference.  JA324, JA329. But ODNI neither pled nor proved its same decision defense, and therefore the issue of ODNI's liability for the Cyber position may be resolved by this Court.

In addressing Hannah's argument that ODNI was required to plead the affirmative defense that it would have made the "same decision," the lower court completely sidestepped the issue, confusingly stating that "the extent of appropriate damages is not a question of liability, for which an affirmative defense can be raised." JA333.  It was as if the court had ruled for Hannah on the Cyber position but simply awarded her zero damages.  *Id*.  But that is clearly not what the court ruled; only a few sentences after making this comment, the court stated: "**[c]ausation of harm** is part of plaintiff's burden of proof."  JA334 (emphasis added).  This was the court's ultimate finding below.

As noted above, since the causation burden in the FMLA interference context should be shared with the employer under the same decision defense, the court's statement is incorrect. *Sheeks*, 2022 U.S. Dist. LEXIS 86261, at *22 ("the employer will not be liable for FMLA interference **if it can 'prove** it would have made the same decision had the employee not exercised the employee's FMLA rights.'") (emphasis added) (quoting *Throneberry*, 403 F.3d at 980).  More than that, since ODNI had the burden to prove the "same decision defense," it also had the burden

of pleading it.  *Comcast Corp*., 140 S. Ct. at 1017; FRCP 8(c).  ODNI's failure to plead or even raise the defense before or at the trial is, as a matter of law, fatal to the defense now being raised.  *Id*.  For this reason alone, this Court should enter judgment for Hannah as to liability for the loss of the Cyber position.

If this Court proceeds past the pleading defect and considers the evidence, it is still equally clear that judgment should be entered in favor of Appellant.  The trial court amazingly found "that Ewing's mind was made up not to hire plaintiff for the Cyber Position independent of the FMLA interference."  JA334.  Mr. Ewing, however, did not share the court's confidence.  He actually admitted he was uncertain what his decision would have been if not for the April attendance issues. JA89-90.  For instance, Mr. Ewing testified at the trial that "[i]f we had seen some pattern of [] positive conduct after the 9th of April, [considering her for the Cyber position] would have been a real possibility."  JA51: 13-15.  And, when asked point blank "if Hannah had just eliminated her attendance and reporting issues [as of] April [9], 2015…, you likely would have hired her for the cyber position in June of 2015; isn't that correct? **I don't know**."  JA89: 20-24, JA90: 1 (emphasis added).

In addition, Mr. Ewing wanted the endorsement of his superior officer Stephanie O'Sullivan, who "thought very highly of Hannah and…knew Hannah very well."  JA115: 10-11.  When she was asked at trial how much time Hannah would have needed, after returning from leave, to prove herself to be hired in the

Cyber position, Ms. O'Sullivan testified "two months seems a little long. [I believe] two weeks to a month" would have been enough.[15] JA153: 22-23. Had Hannah been provided the requested four weeks of leave on April 9, 2020, she would have been back at work for *just under two months* when Mr. Ewing asked Ms. O'Sullivan about the hiring decision on June 30, 2015. JA289-290.

Far from "having his mind made up," Mr. Ewing was completely unsure as to what he would have done with the hiring decision if Hannah had not had the "spiraling" attendance issues after April 9, 2015. JA116. As a matter of law, ODNI's testimony that it "did not know" what it would have done on the hiring decision, but for its FMLA interference, is patently insufficient evidence to meet its affirmative defense burden. *Sparenberg v. Eagle Alliance*, No. JFM-14-1667, 2015 U.S. Dist. LEXIS 140368, 2015 WL 6122809, at *4 (D. Md. Oct. 15, 2015) ("An employer can avoid liability if it shows the plaintiff's FMLA leave was not a but-for cause of an adverse employment action.") Since ODNI failed to prove its affirmative defense, the lower court should have ruled in Hannah's favor granting her liability on the Cyber position.

[15] This was a fact the trial judge exclaimed she "found very significant," in denying the Motion for Judgment after the closing of the plaintiff's case in chief. JA172: 10-11.

For the above reasons, this Court should now enter judgment in Hannah's favor finding ODNI's FMLA violation cost her the Cyber position and remand the case to the trial court solely for the determination of mitigation of damages.

## CONCLUSION

For the foregoing reasons, Hannah respectfully requests that this Court reverse and remand the case for the lower court to address the proper amount of damages to be awarded for the Cyber position.

## REQUEST FOR ORAL ARGUMENT

Appellant believes an oral argument would be helpful to further elucidate the novel claims raised by this appeal, and therefore requests a hearing on this matter.

*/s/ Timothy P. Bosson*
Timothy P. Bosson
Isaiah R. Kalinowski
BOSSON LEGAL GROUP PC
8300 Arlington Blvd.,
Suite B2
Fairfax, VA 22031
(571) 775-2529
tbosson@bossonlaw.com
ikalinowski@bossonlaw.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

this document contains 7,770 words.

2.    This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated:  June 29, 2022                Respectfully submitted,


                                */s/  Timothy P. Bosson*
                                Timothy P. Bosson

                                *Counsel for Appellant*