No. 22-1498

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

————————————

HANNAH P.,

Plaintiff-Appellant,

v.

AVRIL D. HAINES, in her official capacity as Director of the Office of the
Director of National Intelligence,

Defendant-Appellee

and

MARK EWING, in his personal capacity MacLean, VA

Defendant.

————————————

On Appeal from the United States District Court
for the Eastern District of Virginia

————————————

## BRIEF FOR APPELLEE

————————————

*Of Counsel:*

JAMES R. WHITMAN
*Chief of Litigation*

JARED S. HATCH
*Associate General Counsel*

*Office of the Director of
National Intelligence*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

JESSICA D. EBER
  *United States Attorney*

ALISA B. KLEIN
CAROLINE D. LOPEZ
  *Attorneys, Appellate Staff
  Civil Division, Room 7535
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-4825*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ........................................................... 1

STATEMENT OF THE ISSUE ................................................................. 1

STATEMENT OF THE CASE .................................................................. 2

    A.    Factual Background and This Court's Prior Decision................... 2

    B.    District Court Proceedings on Remand................................ 5

SUMMARY OF ARGUMENT ................................................................. 7

STANDARD OF REVIEW..................................................................... 9

ARGUMENT....................................................................................... 9

THE DISTRICT COURT'S DENIAL OF DAMAGES FOR THE CYBER
    POSITION SHOULD BE AFFIRMED............................................. 9

    A.    The District Court's Dispositive Finding Of Fact Is Not
        Clearly Erroneous .................................................... 9

    B.    Plaintiff's Request For Damages Attributable To Her
        Failure To Secure The Permanent Cyber Position Is Also
        Contrary To This Court's Prior Decision ......................... 19

CONCLUSION ................................................................................. 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*DNA Ex Post Facto Issues, In re*,
  466 F. App'x 235 (4th Cir. 2012)......................................................................22

*Doe v. Chao*,
  511 F.3d 461 (4th Cir. 2007)............................................................................23

*Garey v. James S. Farrin, P.C.*,
  35 F.4th 917 (4th Cir. 2022) ............................................................................21

*Hannah P. v. Coats*,
  916 F.3d 327 (4th Cir. 2019).............................1, 2, 3, 4, 8, 14, 19, 20, 20-21, 22

*Hannah P. v. Haines*,
  577 F. Supp. 3d 429 (E.D. Va. 2021) ............... 2, 5, 6, 10, 11, 12, 13, 14, 15, 16

*Hannah P. v. Haines*,
  No. 1:16-cv-1030, 2022 WL 824829 (E.D. Va. Mar. 18, 2022)......... 7, 9, 11, 17

*Hannah P. v. Maguire*,
  140 S. Ct. 1294 (2020) ..........................................................................5

*Heathcoat v. Potts*,
  905 F.2d 367 (11th Cir. 1990)...........................................................................23

*Hicks v. Ferreyra*,
  965 F.3d 302 (4th Cir. 2020).............................................................................21

*JTH Tax, Inc. v. Aime*,
  984 F.3d 284 (4th Cir. 2021).............................................................................23

*Roanoke Cement Co. v. Falk Corp.*,
  413 F.3d 431 (4th Cir. 2005)................................................................................9

*Under Seal, In re*,
   749 F.3d 276 (4th Cir. 2014)................................................................21

**Statutes:**

28 U.S.C. § 1291.............................................................................................1

28 U.S.C. § 1331.............................................................................................1

29 U.S.C. § 2615(a).......................................................................................1

29 U.S.C. § 2617(a)(1)(A)(i)(I).................................................................9, 10

**Regulation:**

29 C.F.R. § 825.220(c) ............................................................................ 10, 21

## STATEMENT OF JURISDICTION

The claim at issue in this appeal was brought pursuant to 29 U.S.C.
§ 2615(a). The district court had jurisdiction under 28 U.S.C. § 1331. The
district court entered final judgment on April 4, 2022. JA 338. Plaintiff
timely filed a notice of appeal on May 3, 2022. JA 339-340. This Court has
appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Plaintiff was employed by the defendant agency for a five-year term
that ended in 2016. In the prior appeal, this Court held that the agency had
a legitimate reason for not hiring plaintiff for a permanent position. *See
Hannah P. v. Coats* (*Hannah P. I*), 916 F.3d 327, 342-45, 347-48 (4th Cir. 2019).
This Court thus affirmed the entry of summary judgment for the agency on
plaintiff's claims that the failure to hire her was discrimination under the
Rehabilitation Act and retaliation under the Family and Medical Leave Act
(FMLA). *See id.*

However, this Court vacated and remanded for the district court to
consider a narrow issue: whether the agency's failure to give plaintiff
notice of her FMLA rights prejudiced her because she could have used sick
leave for a four-week period of leave, rather than annual leave that would

have been paid out at the end of her term of service. *See Hannah P. I*, 916 F.3d at 346-47 (noting that plaintiff valued that benefit at approximately $20,000). After a bench trial, the district court ruled for plaintiff on that claim and awarded her approximately $19,000. *See* JA 337.

The question presented is whether the district court erred in rejecting plaintiff's request for more than $1.5 million in additional damages that she attributed to the agency's failure to hire her for the permanent position.

## STATEMENT OF THE CASE

### A. Factual Background and This Court's Prior Decision

1. The factual background is set forth in detail in this Court's prior opinion and briefly summarized here. In March 2011, the defendant agency, the Office of the Director of National Intelligence, hired plaintiff for a five-year term. *See Hannah P. I*, 916 F.3d 327, 333 (4th Cir. 2019). In early 2015, plaintiff began to have serious issues with attendance and reporting, which persisted despite the agency's efforts to accommodate her depression. *See id.* at 333-35; *see also Hannah P. v. Haines* (*Hannah P. II*), 577 F. Supp. 3d 429, 435-36 (E.D. Va. 2021) (opinion issued after bench trial).

In February 2015, plaintiff interviewed for two permanent positions within the agency but was not selected. *See Hannah P. I*, 916 F.3d at 335-36.

2

In June 2015, after returning from four weeks of leave, plaintiff interviewed for a third permanent position (the "Cyber position") but again was not selected. *See id.* Plaintiff left the agency when her five-year term ended in March 2016. *See id.* at 336.

2. Plaintiff filed this action alleging violations of the Rehabilitation Act and the FMLA. The district court entered summary judgment for the agency, which this Court largely affirmed. The divided panel held (as relevant here) that the evidence showed that plaintiff's "perpetual issues with attendance, timeliness, and reporting absences to her superiors were the bases of [the agency's] decision not to hire her" for the permanent Cyber position. *Hannah P. I*, 916 F.3d at 342. This Court determined that the persistence of these "continuous attendance issue[s]," even after receiving reasonable accommodations, rendered plaintiff not "qualified" for the position within the meaning of the Rehabilitation Act, and that these issues therefore were legitimate considerations for the agency even though her "struggle with depression was the cause of her attendance issues." *Id.* at 343-44. This Court thus rejected plaintiff's contention that the agency's failure to hire her for the permanent Cyber position amounted to

3

discrimination under the Rehabilitation Act, *see id.* at 345, or retaliation under the FMLA, *see id.* at 347-48.

However, this Court unanimously vacated the entry of summary judgment and remanded for further proceedings on plaintiff's claim that the agency had interfered with plaintiff's FMLA rights. *See Hannah P. I*, 916 F.3d at 345-47. This Court reasoned that, if the agency had given plaintiff notice of her FMLA rights, the evidence suggested that plaintiff "would have used only sick leave for her leave of absence." *Id.* at 347 (citing plaintiff's declaration) ("Had I known I could have chosen to take sick leave for the entire period, I would have elected to do so.") (quotation marks omitted). This Court explained that, instead, "she used a combination of sick leave and annual time to take four weeks off"; that, unlike annual leave, "sick leave is not paid out at the end of an employee's service"; and that plaintiff's declaration stated that her use of annual leave resulted "in a loss of a benefit worth at least $20,000." *Id*. (quotation marks omitted). For these reasons, this Court concluded that plaintiff had demonstrated a genuine issue of material fact that precluded summary judgment on her FMLA interference claim. *See id.*

Plaintiff filed a petition for rehearing en banc, which this Court denied by a vote of 13-2. *See* Order, *Hannah P. I*, 916 F.3d 327 (No. 17-1943), Dkt. No. 44. Plaintiff then filed a petition for a writ of certiorari, which the Supreme Court denied. *See Hannah P. v. Maguire*, 140 S. Ct. 1294 (2020).

## B.  District Court Proceedings on Remand

1. On remand, the case was randomly reassigned to Judge Brinkema, who conducted a bench trial on plaintiff's FMLA interference claim. JA 337. The district court ruled in plaintiff's favor on that claim and awarded her a total of $19,184.37, *see* JA 337, which represented the value of the annual leave that plaintiff took instead of sick leave, plus liquidated damages and interest, *see* JA 337; *Hannah P. II*, 577 F. Supp. 3d at 443-44.[1]

The district court denied plaintiff's request for more than $1.5 million in additional damages that she attributed to the agency's failure to hire her for the permanent Cyber position (including backpay and front pay). *See Hannah P. II*, 577 F. Supp. 3d at 444-47; *see also* Post-Trial Br. on Remedies at 1-2, *Hannah P. v. Haines*, No. 1:16-cv-1030 (E.D. Va. Mar. 9, 2021), Dkt. No.

---

[1] The district court denied plaintiff's requests for damages for allegedly lost sick leave, as well for reinstatement and injunctive relief, which plaintiff has not appealed. *See Hannah P. II*, 577 F. Supp. 3d at 443-44, 446-48.

5

166 (plaintiff's damages requests). The court found that the evidence did
not support plaintiff's contention that she would have been chosen for the
Cyber position if she had taken her leave earlier (early April through early
May), rather than a few weeks later. *See Hannah P. II*, 577 F. Supp. 3d. at
445-46. Based on the trial testimony and contemporaneous emails of the
official with hiring authority, Mark Ewing, the court found that Mr. Ewing
"had fully made up his mind not to hire plaintiff by June 30," even though
"he had seen several years of [plaintiff's] exemplary work record before her
attendance problems in the winter and spring of 2015 and she had been
back at work for nearly a month by that time." *Id.* at 445. The court found
that Mr. Ewing regarded plaintiff as "a 'disciplinary problem' with a
'history of issues' who was approaching permanent hire as an
'entitlement.'" *Id.* (quoting JA 289-290 (Def.'s Ex. 52 (June 30 email))). And
the court explained that Mr. Ewing's June 30 email stated that plaintiff's
"'attendance and work and attitude' issues began in 'mid-January 2015'
and grew serious enough to warrant a management referral to" the
Employee Assistance Program (EAP) in April—which, the district court
emphasized, was a time period that predates the FMLA interference. *Id.* at
445-46 (alteration omitted) (quoting JA 289 (June 30 email)).

6

2. Plaintiff moved for reconsideration under Rule 54(b), and the district court denied that motion. *See Hannah P. v. Haines* (*Hannah P. III*), No. 1:16-cv-1030, 2022 WL 824829 (E.D. Va. Mar. 18, 2022). The court reiterated its finding that "defendant's FMLA interference was not the cause of plaintiff's non-selection for the Cyber Position." *Id.* at *3. The court concluded that, "[a]t core, plaintiff simply disagrees with the Court's finding that Ewing's mind was made up not to hire plaintiff for the Cyber Position independent of the FMLA interference," which is not a basis for reconsideration. *Id.* at *5.

## SUMMARY OF ARGUMENT

Plaintiff was employed for a five-year term by the defendant agency, the Office of the Director of National Intelligence, and unsuccessfully applied for the permanent Cyber position. In the prior appeal, this Court affirmed the entry of summary judgment in the government's favor on her claims that the agency's failure to hire her was discrimination under the Rehabilitation Act and retaliation under the Family and Medical Leave Act. This Court held that the agency had a legitimate, nondiscriminatory reason not to hire plaintiff based on several months of attendance and reporting issues that persisted even after reasonable accommodations and were so

7

serious that they rendered her not "qualified" for the position. *See Hannah P. I*, 916 F.3d 327, 342-45, 347-48 (4th Cir. 2019). The Court, however, remanded for consideration of the narrow issue of whether the agency's failure to give plaintiff notice of her FMLA rights prejudiced her because she could have used sick leave for a four-week leave of absence, rather than annual leave that would have been paid out at the end of her term of service, a benefit that plaintiff valued at approximately $20,000. *See id.* at 346-47.

After holding a bench trial on remand, the district court ruled for plaintiff on that question and awarded her approximately $19,000 for her lost annual leave. The district court, however, denied plaintiff's request for over $1.5 million in additional damages because the agency did not hire her for the Cyber position. That damages ruling rests on a finding of fact that the hiring official's decision was not caused by the FMLA interference. Plaintiff does not demonstrate that this fact finding was clearly erroneous, and her appeal fails for that reason alone. Her appeal is also inconsistent with and therefore foreclosed by this Court's prior decision, which remanded for consideration of a narrow issue that did not encompass damages attributable to plaintiff's failure to secure the permanent position.

8

## STANDARD OF REVIEW

The judgment of the district court rests on a finding of fact that is subject to review for clear error. *See Roanoke Cement Co. v. Falk Corp.*, 413 F.3d 431, 433 (4th Cir. 2005).

## ARGUMENT

## THE DISTRICT COURT'S DENIAL OF DAMAGES FOR THE CYBER POSITION SHOULD BE AFFIRMED

### A. The District Court's Dispositive Finding Of Fact Is Not Clearly Erroneous

1. As the district court explained, "[a]t core, plaintiff simply disagrees with the Court's finding that Ewing's mind was made up not to hire plaintiff for the Cyber Position independent of the FMLA interference." *Hannah P. III*, No. 1:16-cv-1030, 2022 WL 824829, at *5 (E.D. Va. Mar. 18, 2022). The judgment should be affirmed on the basis of that finding of fact, which is not clearly erroneous. That fact finding forecloses plaintiff's contention that she was entitled to damages because her failure to obtain the Cyber position was "by reason of" the FMLA interference pursuant to 29 U.S.C. § 2617(a)(1)(A)(i)(I), and her contention first raised on appeal that

9

her absences after her first leave request were a factor in the decision in contravention of 29 C.F.R. § 825.220(c).[2]

Based on trial testimony and contemporaneous emails, the district court found that Mr. Ewing, the official with hiring responsibility, "saw [plaintiff] as a problematic employee based on [plaintiff's] attendance before April and was simply not interested in hiring her thereafter." *Hannah P. II*, 577 F. Supp. 3d 429, 439, 446 (E.D. Va. 2021). In other words, the court found that Mr. Ewing's opinion was formed based on plaintiff's conduct *before* the FMLA interference occurred and therefore was not caused by that interference.

The district court reasoned that Mr. Ewing's June 30 email described plaintiff as "a 'disciplinary problem' with a 'history of issues' who was approaching permanent hire as an 'entitlement.'" *Hannah P. II*, 577 F. Supp. 3d at 445 (quoting JA 289-290 (June 30 email)). That email stated that

_____

[2] In the district court, plaintiff indicated that she was "raising the loss of the Cyber position as a *damage* under FMLA Interference and proof of *liability* under FMLA Retaliation." Opp'n to Mot. in Lim. on Cyber Position at 8, *Hannah P. v. Haines*, 1:16-cv-1030 (E.D. Va. Aug. 28, 2020), Dkt. No. 106. As a result, the district court focused on the FMLA's damages provision, 29 U.S.C. § 2617(a)(1)(A)(i)(I), and whether plaintiff had satisfied the requirements for showing her entitlement to damages under this Court's precedents.

plaintiff's "'attendance and work and attitude' issues began in mid-Jan[uary] 2015' and grew serious enough to warrant a management referral to EAP in April." *Id.* at 445-46 (alteration in original) (quoting JA 289 (June 30 email)); *see also id.* at 445 (noting Mr. Ewing's description of plaintiff's "problems" in this email as "'consistent' for 'several months'" (quoting JA 290 (June 30 email))). In response to plaintiff's reconsideration motion, the district court reiterated that Mr. Ewing's mind was made up not to hire plaintiff for the Cyber position "independent of" the FMLA interference. *Hannah P. III*, 2022 WL 824829, at *5. Accordingly, the court rejected plaintiff's arguments that she was entitled to more than $1.5 million in damages spanning the years of 2016 to 2023 based on her non-selection for a potential job that did not materialize.

In so concluding, the district court explained that the record contradicted plaintiff's theory that, "without defendant's interference," Mr. Ewing might have made a different decision because plaintiff "would have had sufficient time to demonstrate positive attendance before Ewing made his hiring decision." *Hannah P. II*, 577 F. Supp. 3d at 445. While acknowledging that the "argument has some appeal," the district court concluded that it was unfounded because Mr. Ewing had "testified that he

11

had fully made up his mind not to hire plaintiff by June 30," despite "ha[ving] seen several years of Hannah's exemplary work record before her attendance problems" and the fact that she had a "perfect attendance record since returning from leave" for "nearly a month" at the time of the decision. *Id.* at 445-46. The district court noted that Mr. Ewing seemed uninterested in her attendance record after her return either at the time of the decision or even several weeks later, thereby underscoring that a few more weeks of satisfactory attendance would not have made a difference. *Id.*

The district court also rejected plaintiff's argument that she might have been chosen for the Cyber position absent the FMLA interference because "her record would not have been as damaging in the first place" if she had gone on leave after April 9. *Hannah P. II*, 577 F. Supp. 3d at 445-46. The court explained that the June 30 email's reference to plaintiff's "attendance problem continu[ing] after she was referred to EAP on April 9" did not alter the analysis because, read in its entirety, the email made clear that Mr. Ewing's view was that plaintiff's "attendance and work and attitude" issues were "'consistent' for 'several months'" and had "gr[own] serious enough to warrant a management referral to EAP in

12

April"—a "time period [that] predates when the FMLA interference occurred." *Id.* at 445-46 (quoting JA 289-290 (June 30 email)).

Having found that Mr. Ewing "saw Hannah as a problematic employee based on her attendance *before* April and simply was not interested in hiring her thereafter," the district court thus concluded that plaintiff could not prevail on the theory that she was entitled to damages because she lost the Cyber position by reason of the FMLA interference occurring at some point *after* April 9. *Hannah P. II*, 577 F. Supp. 3d at 446 (emphasis added).

2. Plaintiff's contrary arguments provide no basis to set aside the district court's finding that Mr. Ewing's decision was made based on conduct that predates the FMLA interference. Contrary to plaintiff's contention (Pl.'s Br. 24 (quoting JA 86: 5-12)), the reference in Mr. Ewing's testimony to having considered plaintiff's attendance and reporting issues "through April" was not an admission that he based his decision on her attendance and reporting issues in the latter part of April. Instead, that testimony made clear that Mr. Ewing based his decision on the issues described in the April 9 EAP referral memorandum, including certain times in April that predate her leave request. *See* JA 86: 8-12 ("I was

13

considering -- *to go back to the EAP referral memorandum*, I was considering

her erratic attendance beginning sometime in early -- in mid-January

through April." (emphasis added)).

Similarly, Mr. Ewing's June 30 email emphasized that plaintiff's

"attendance and work and attitude" issues were "'consistent' for 'several

months'" and had "gr[own]serious enough to warrant a management

referral to EAP in April"—a "time period [that] predates when the FMLA

interference occurred." *Hannah P. II*, 577 F. Supp. 3d at 445-46 (quoting

JA 289-290 (June 30 email)). As the district court explained, the email's

reference to plaintiff's "attendance problem continu[ing] after she was

referred to EAP on April 9" did not alter the fact that Mr. Ewing had

already formed his opinion on the basis of conduct that predated that

referral. *Id.* Indeed, this Court had previously relied on the June 30 email in

holding that Mr. Ewing had legitimate reason not to hire plaintiff for the

Cyber position due to the "'consistent history of issues with [plaintiff] over

many months' regarding [plaintiff's] 'attendance at work and attitude.'"

*Hannah P. I*, 916 F.3d 327, 347 (4th Cir. 2019) (quoting June 30 email).

Plaintiff likewise provides no basis to set aside the district court's

finding that a few more weeks of satisfactory attendance after her leave

14

would not have changed Mr. Ewing's mind. As the district court explained, Mr. Ewing "testified that he had fully made up his mind not to hire plaintiff by June 30," despite "ha[ving] seen several years of Hannah's exemplary work record before her attendance problems" and the fact that plaintiff had a "perfect attendance record since returning from leave" for "nearly a month" at the time of the decision. *Hannah P. II*, 577 F. Supp. 3d at 445-46.

Plaintiff emphasizes that Mr. Ewing stated, "I don't know," when asked by plaintiff's counsel "'if Hannah had just eliminated her attendance and reporting issues [as of] April [9], 2015…, you likely would have hired her for the cyber position in June of 2015." *See* Pl.'s Br. 30 (alterations in original) (first quoting JA 89: 20-24) (and then quoting JA 90: 1). But in that testimony, Mr. Ewing explained: "I really don't know, because the way the question is asked -- and here's why: Because we would need some time to understand that the conduct has actually been corrected. So I'm not sure that in April or May, we would have." JA 90: 6-10. Mr. Ewing thus clarified that "I don't know" meant that, even had plaintiff taken leave a few weeks earlier, she would not have had a sufficient period of improved attendance to alter his decision. *See also* JA 96: 5-12 (Mr. Ewing's testimony confirming

15

that he had not found the question of whether her attendance had improved in May relevant to his decision because "she had several weeks or months of reportedly unpredictable and unreliable attendance at work").

Contrary to plaintiff's suggestion (Pl.'s Br. 30), the district court expressly acknowledged Mr. Ewing's testimony that it "would have been a real possibility" that she might have been hired "[i]f we had seen some pattern of [] positive conduct after the 9th of April," but the court found that this statement did not support the conclusion that Mr. Ewing would have made a different decision at the relevant time when the record was viewed as a whole. *See Hannah P. II*, 577 F. Supp. at 445 (alterations in original) (quoting JA 87: 15-17 (the testimony on which plaintiff relies)).

Plaintiff also argues (Pl's Br. 31 (quoting JA 153: 23)) that an earlier return would have made a difference because Mr. Ewing's "superior officer . . . O'Sullivan" had testified that she believed that "'two weeks to a month'" would have been enough to justify a different decision. But the district court considered Ms. O'Sullivan's testimony to this effect before finding that Mr. Ewing—who was responsible for the hiring decision— "saw things differently." *Hannah P. II*, 577 F. Supp. 3d at 446. Ms.

O'Sullivan likewise confirmed in her testimony that the hiring decision was Mr. Ewing's to make. *See* JA 151: 2-14 (Ms. O'Sullivan's testimony that she would "not make or approve the decision" for a permanent hire position).

Plaintiff incorrectly asserts that she was "hamstrung" from presenting her theory of why the agency was liable for her non-selection for the Cyber position. *See* Pl.'s Br. 28-29. On the contrary, she had repeated opportunities to develop and present such evidence, including Mr. Ewing's deposition at the summary-judgment stage and his examination at trial. As the district court observed, plaintiff "was certainly on notice that she had to prove that defendant's FMLA interference caused her damages, as well as the amount of those damages," as "[s]he presented evidence and argument on these issues" and "devoted seven paragraphs of her pre-trial brief to arguing that [her] non-selection was caused 'by reason of' defendant's interference.'" *Hannah P. III*, 2022 WL 824829, at *2. And as already explained, there was no clear error in the district court's finding that plaintiff was not selected for the permanent Cyber position for reasons independent of the FMLA interference.

3. Because the district court's decision turned on a finding of fact that is dispositive under any potentially applicable standard, the legal issues

17

that plaintiff seeks to raise on appeal are not properly presented. For example, plaintiff argues (Pl.'s Br. 17-30) that the government bore the burden of proving that Mr. Ewing would have made the same decision absent her post-April 9 reporting and attendance issues and that those post-April 9 issues were not a negative factor in the hiring decision. But the district court found that Mr. Ewing had made up his mind based on plaintiff's attendance and reporting issues before April 9; therefore, he did not base the decision on post-April issues. *See supra* pp. 5-7, 9-13.

For the same reason, it is immaterial whether the damages that plaintiff sought would be regarded as consequential damages and whether the negative factor test applies to FMLA interference claims under this Court's precedent. *See* Pl.'s Br. 11-17, 25-28. Because the district court's fact finding would bar recovery under any of plaintiff's theories, this case presents no occasion to address abstract arguments about the proper analytical framework. The judgment should be affirmed on the basis of the district court's fact finding alone.

**B.    Plaintiff's Request For Damages Attributable To Her Failure To Secure The Permanent Cyber Position Is Also Contrary To This Court's Prior Decision**

The judgment also may be affirmed on the ground that this Court already held that plaintiff cannot recover damages for her failure to secure the permanent Cyber position. That was the central issue in the prior appeal, and this Court's resolution of that issue made additional fact finding on the question unnecessary.[3]

In the prior appeal, this Court held, on the basis of the summary-judgment record, that the agency's "proffered explanation for not hiring Hannah for the Cyber position is genuine, legitimate, and nondiscriminatory." *Hannah P. I*, 916 F.3d at 343. This Court thus affirmed the entry of summary judgment on plaintiff's Rehabilitation Act and FMLA

---

[3] The government raised this argument in district court in a pretrial motion to exclude evidence related to plaintiff's non-selection for the Cyber position, which the district court denied without analysis. *See* Def.'s Mot. in Lim. at 1, *Hannah P. v. Haines*, 1:16-cv-1030 (E.D. Va. Aug. 14, 2020), Dkt. No. 101; Mem. of Law in Supp. of Def.'s Mot. in Lim. at 3-6, *Hannah P. v. Haines*, 1:16-cv-1030 (E.D. Va. Aug. 14, 2020), Dkt. No. 102; JA 37, 38. The government renewed the argument at trial as a standing objection and later preserved this argument again for appeal. *See* Trial Tr. Vol. I at 90:17-22, *Hannah P. v. Haines*, No. 1:16-cv-1030 (E.D. Va. Mar. 1, 2021), Dkt. No. 164; Def.'s Supp. Br. on Remedies at 5-6 n.5, *Hannah P. v. Haines*, No. 1:16-cv-1030 (E.D. Va. Mar. 9, 2021), Dkt. No. 165.

retaliation claims, despite her contention that the agency should not have been permitted to rely on her "attendance issues [that] occurred in April 2015" because the agency had "wrongly denied [her] FMLA leave request on April 9th" and the attendance issues thereafter "were due largely to Defendant's own bad actions." Pl.'s Br. at 29-30, *Hannah P. I*, 916 F.3d 327 (No. 17-1943), 2017 WL 5997653, at *29-30 (Rehabilitation Act retaliation claim); *see also id.* at 62 & n.37, 2017 WL 5997653, at *62 & n.37 (making same argument in support of her FMLA retaliation claim). This Court emphasized that "it is not the job of this court to decide whether [the agency] made the right choice by not hiring [plaintiff] for the Cyber position" but "simply to decide whether [the agency] made an *illegal* choice." *Hannah P. I*, 916 F.3d at 345. Because the agency's choice was not illegal, there was no basis to award damages attributable to plaintiff's failure to obtain the permanent Cyber position. *See id.*

This Court likewise considered the applicability of the negative factor regulation in concluding that plaintiff failed to rebut the agency's "legitimate, nonretaliatory reason for not hiring her for the Cyber position" based on "'a consistent history of issues with [plaintiff] over many months' regarding [plaintiff's] 'attendance at work and attitude.'" *See Hannah P. I*,

20

916 F.3d at 347-348 (first citing 29 C.F.R. § 825.220(c)) (and then quoting June 30 email)). Plaintiff accepted that holding without seeking further review and also expressly waived any reliance on this regulation with respect to her remaining claim on remand, which confirms that this issue was not before the district court and therefore is not properly before this Court on this appeal. *See* Opp'n to Mot. in Lim. on Cyber Position at 7, *Hannah P. v. Haines*, 1:16-cv-1030 (E.D. Va Aug. 28, 2020), Dkt. No. 106 ("Plaintiff here is not seeking to utilize [29 C.F.R. § ]825.220(c)."); *see also, e.g.*, *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) (applying the "settled rule" that "absent exceptional circumstances, we do not consider issues raised for the first time on appeal") (cleaned up); *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) (explaining that this Court applies "an even higher bar than the 'plain error' standard applied in criminal cases" before allowing such forfeited arguments); *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 923 (4th Cir. 2022) (holding that plaintiffs had forfeited their ability to raise a particular theory because they had "eschew[ed]" it in their pleadings).

The purpose of this Court's limited remand as to the FMLA interference claim was not to revisit the agency's decision not to select

plaintiff for the Cyber position; rather it was to address the narrow question of whether plaintiff was prejudiced by FMLA interference because she could have chosen to use sick leave alone, rather than a combination of sick leave and annual leave, for her four-week period of leave—a benefit she valued at approximately $20,000. *See Hannah P. I*, 916 F.3d at 345-47.[4] Notably, this Court did not adopt plaintiff's theory that she was prejudiced because the agency's FMLA interference caused her to delay her leave from April 9 until May 5, and the "April absences and tardies" in the intervening period "were then used against [her] in the hiring decision for the Cyber position, costing her the permanent hire." Pl.'s Br. at 59, *Hannah P. I*, 2017 WL 5997653, at *59.

Under the law of the case doctrine, the "'findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on later appeal." *In re DNA Ex Post Facto Issues*, 466 F. App'x 235, 238 (4th Cir. 2012)

---

[4] The remand also required the district court to determine whether plaintiff's "disclosure of her depression and her April 9, 2015, request for psychiatrist-recommended leave" was sufficient to "trigger [the agency's] responsibility to inquire further about whether Hannah was seeking FMLA leave." *Hannah P. I*, 916 F.3d at 346.

(quoting *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir. 1990)). Similarly, the mandate rule prevents lower courts "from considering questions that the mandate of the higher court has laid to rest."  *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007); *see also, e.g.*, *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 291 (4th Cir. 2021). As discussed above, this Court's prior decision conclusively determined that the agency permissibly declined to select plaintiff for the permanent Cyber position and left open only the question of whether plaintiff was prejudiced by her use of annual rather than sick leave. Thus, the judgment is also properly affirmed under the law of the case doctrine and mandate rule.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

JAMES R. WHITMAN
    *Chief of Litigation*

JARED S. HATCH
    *Associate General Counsel*

BRIAN M. BOYNTON
    *Principal Deputy Assistant*
    *Attorney General*

JESSICA D. EBER
    *United States Attorney*

ALISA B. KLEIN

 *s/ Caroline D. Lopez*
CAROLINE D. LOPEZ
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7535*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 514-4825*
    *caroline.d.lopez@usdoj.gov*

September 2022

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,881 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

s/ *Caroline D. Lopez*
Caroline D. Lopez

A1

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

*s/ Caroline D. Lopez*
Caroline D. Lopez

A2