# RECORD NO. 22-1498

In The

# United States Court Of Appeals

## For The Fourth Circuit

## HANNAH P.,

*Plaintiff – Appellant,*

**v.**

## AVRIL D. HAINES, in her official capicity as Director of National Intelligence,

*Defendant – Appellee,*

**and**

## MARK EWING,
### in his personal capacity McLean, VA

*Defendant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA**

_____

## REPLY BRIEF OF APPELLANT

_____

**Timothy P. Bosson**
**Isaiah R. Kalinowski**
**BOSSON LEGAL GROUP PC**
**8300 Arlington Blvd.,**
**Suite B2**
**Fairfax, VA  22031**
**(571) 775-2529**
**tbosson@bossonlaw.com**
**ikalinowski@bossonlaw.com**

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................3

    A.    In making his hiring decision, Ewing considered attendance issues caused by ODNI's illegal interference with Hannah's FMLA leave ...........................................................................3

    B.    Because the Court applied the wrong legal standard, it wrongly found that Ewing made his hiring decision "independent of the FMLA interference" ...............................................................6

        1.    The legal errors tainted the factual findings ..............................6

        2.    Even applying the clearly erroneous standard Hannah should still prevail ...................................................................10

    C.    This Court did not address FMLA interference damages ..................12

        1.    This Court did not mandate the FMLA Interference damages permitted ................................................................12

        2.    Findings on other claims are not dispositive of this claim .......14

    D.    The recent holding in *Roberts* supports Hannah's arguments ........17

CONCLUSION .....................................................................................18

CERTIFICATE OF COMPLIANCE .....................................................19

i

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Abbott v. Perez*,
　　138 S. Ct. 2305 (2018)..............................................................7

*Alvarez v. Lynch*,
　　828 F.3d 288 (4th Cir. 2016) .................................................. 2

*Bose Corp. v. Consumers Union of United States, Inc.*,
　　466 U.S. 485 (1984)..............................................................7, 8

*Butts v. United States*,
　　930 F.3d 234 (4th Cir. 2019) .........................................10

*Everett v. Pitt Cnty. Bd. Of Educ.*,
　　678 F.3d 281 (4th Cir. 2012) ...........................................7

*Gertz v. Robert Welch, Inc.*,
　　680 F.2d 527 (7th Cir. 1982) .........................................13

*Grant Thornton, LLP v. FDIC*,
　　435 F. App'x 188 (4th Cir. 2011) ...................................7

*Hannah P. v. Coats*,
　　916 F.3d 327 (4th Cir. 2019) ..............................................*passim*

*Heyer v. United States Bureau of Prisons*,
　　984 F.3d 347 (4th Cir. 2021) .........................................10

*Jiminez v. Mary Washington Coll.*,
　　57 F.3d 369 (4th Cir. 1995) .........................................10

*Major v. CSX Transp., Inc.*,
　　278 F. Supp. 2d 597 (D. Md. 2003)..............................13

*Miller v. Mercy Hosp., Inc.*,
　　720 F.2d 356 (4th Cir. 1983) .........................................10

*Quern v. Jordan*,
   440 U.S. 332 (1979)...................................................................................13

*Reed v. Buckeye Fire Equip.*,
   241 F. App'x 917 (4th Cir. 2007) ...........................................................13

*Roberts v. Gestamp W. Va., LLC*,
   45 F.4th 726 (4th Cir. 2022)...........................................................14, 15, 17

*Sejman v. Warner-Lambert Co.*,
   845 F.2d 66 (4th Cir. 1988) .....................................................................12

*Sharif v. United Airlines, Inc.*,
   841 F.3d 199 (4th Cir. 2016) ...................................................................14

*W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*,
   781 Fed. Appx. 214 (4th Cir. 2019)........................................................2, 6

*Yashenko v. Harrah's NC Casino Co.*,
   446 F.3d 541 (4th Cir. 2006)....................................................................17

**Other:**

Cambridge Dictionary (Ed. 2022)
   https://dictionary.cambridge.org/us/grammar/british-grammar/
   principal-or-principle .................................................................................4

## **INTRODUCTION**

Distilled to its essence, this case is about whether an employer can consider attendance issues caused by its own FMLA interference in making a subsequent hiring decision.

ODNI undisputedly interfered with Hannah's right to take FMLA leave from April 9th to May 5th of 2015 ("Interference Period").  JA214.  As a result, Hannah was late to work 8 days and missed 4 during the Interference Period.  JA232.  In late April, Hannah applied for a permanent position with ODNI ("Cyber").  JA 112:10-11.  Mark Ewing, the ultimate hiring decisionmaker, unequivocally considered these attendance issues during the Interference Period.  JA 86:5-12.  In partial reliance on these 12 occurrences, Ewing denied Hannah the Cyber position despite her "exemplary" work performance and the unanimous recommendation of the interviewing panel.  JA 41, 106.

Because Ewing impermissibly considered attendance issues caused by ODNI's illegal FMLA interference, ODNI had the burden of proving that they would have made the same hiring decision notwithstanding their partial reliance.  Had the district court applied the correct legal standard, ODNI would have failed to meet this burden.

On Appeal, ODNI has refused to meaningfully engage in the adversarial process by sidestepping every legal issue raised by Appellant including whether: (1)

the lost wages of the Cyber Position constitute consequential damages (*see*, Appellant Brief ("App't. Br.") at 11), (2) the district court erred by placing the burden of proof solely on Hannah (*id.* at 17), (3) the same-decision or negative-factor test should be applied to the district court's analysis (*id.* at 17, 25) (4) and whether ODNI satisfied their burden under the correct legal standard (*id.* at 28). *See*, Appellee Brief ("Aee. Br.") at 18 ("Because the district court's fact finding would bar recovery under any of plaintiff's theories, this case presents no occasion to address abstract arguments about the proper analytical framework.").

Under this Court's precedent, ODNI has forfeited any response on the above issues because they have "simply ignored" the arguments. *W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 Fed. Appx. 214, 226 (4th Cir. 2019). "[A]n appellee who simply ignores arguments in the appellant's brief has forfeited his response…" *Id.* (quoting *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016)). In lieu of addressing the Appellant's legal arguments, ODNI has instead mischaracterized the district court's findings of fact —by omitting key portions of the record it otherwise seeks to rely upon—to preclude the application of legal analysis.

Because ODNI is attempting to substitute contorted facts for legal analysis, this Court should find that they have forfeited their legal arguments. If the Court finds that the Appellee has not forfeited their response, the arguments still fail for the following reasons.

# ARGUMENT

**A.    In making his hiring decision, Ewing considered attendance issues caused by ODNI's illegal interference with Hannah's FMLA leave**

ODNI seemingly grounds its argument upon the belief that the lower court found that Ewing did not consider *any* attendance issues during the Interference Period in making his non-hire decision. Aee. Br. at 18 ("[T]he district court found that Mr. Ewing had made up his mind based on plaintiff's attendance and reporting issues before April 9; therefore, he did not base the decision on post-April issues."). *If* true, this would mean Ewing relied entirely on pre-April 9th conduct in making his decision and, as Appellee asserts, the same-decision framework would not apply.[1] Unfortunately for ODNI, however, its belief is sorely misplaced.

The lower court's opinions are fundamentally premised upon its view – often just presumed - that Ewing considered Hannah's attendance issues occurring during the Interference Period. JA 331. For example, in analyzing Ewing's June 30th email, the court noted that he "emphasized that Hannah's attendance problem continued

---

[1] Though hard to tell, ODNI may be trying to argue that Ewing had made the hiring decision by April 9th (i.e.- before the Interference Period began). See, e.g., Aee. Br. at 10 ("In other words, the court found that Mr. Ewing's opinion was formed based on plaintiff's conduct before the FMLA interference occurred and therefore was not caused by that interference."). Since Hannah did not even apply for the Cyber position until late April or early May (JA 112:10-11), it would be virtually impossible for Ewing to have made his mind up before she even applied. Regardless, ODNI goes on to concede repeatedly that Ewing only made up his mind on June 30th, not April 9th. See, e.g., Aee. Br. at 12.

after she was referred to EAP on April 9. . ." JA 317. The court also explicitly found that plaintiff's "attendance issues after April 9, 2015—the date on which she first requested leave—were not the *principal* cause of her non-selection for the Cyber position." JA 316 (internal citations omitted) (emphasis added). While use of the word "principal" as an adjective[2] means that the court did not find the Interference Period attendance issues were the *main* cause of the non-selection, it does necessarily follow that the court found them *a* cause of the non-selection.

And how could the court not so find, when Ewing's unambiguous testimony at trial was that he relied on the entire Interference Period in making his decision. The pertinent questioning went as follows:

> Q.    Okay. And in making th[e Cyber] hiring decision, you certainly considered the missed days and failures to call in that Hannah had in April of 2015, right?
> A.    I was considering -- to go back to the EAP referral memorandum, I was considering her erratic attendance beginning sometime in early -- in mid-January through April.
> Q.    All right. So all the way through April 2015, correct?
> A.    That's correct.

JA 86:5-12; *see also* JA77:18-20, JA 95:6-10, JA 101:7-12, JA 102:4-13.

Tellingly, in citing this exact exchange, ODNI **omits the last two lines**, wrongly claiming that Ewing only meant by his testimony to refer to attendance

---

[2]  *See*，https://dictionary.cambridge.org/us/grammar/british-grammar/principal-or-principle.

issues that occurred *before* the Interference Period.[3]  Aee. Br. at 13 ("Mr. Ewing based his decision on the issues . . . including certain times in April that predate her leave request.").  A fair reading of his testimony, however, allows for only a singular interpretation; namely, that Ewing relied upon attendance issues occurring during the Interference Period to deny Hannah the Cyber position.[4]  JA 86:5-12.

Accordingly, the court's findings and the record make clear that Ewing impermissibly based his hiring decision upon attendance issues that occurred during the Interference Period. Having shown that Ewing relied on attendance issues during the Interference Period, Hannah should have met her burden for the lower court to have applied the same-decision analysis.  App't. Br. at 23, 24.  Then, the burden should have shifted to ODNI to prove that it would have made the same decision notwithstanding the reliance; something it failed to do.  *Id.* at 25.  ODNI should not be permitted to sidestep the application of the proper burden by simply mischaracterizing the lower court's finding of facts.

---

[3] This sleight of hand appears to be a mendacious attempt to mislead this Court.
[4] If this Court were to find that the lower court did not find this patently clear fact, then it should reverse the lower court's decision for being clearly erroneous.  See, argument B, 2, *infra*.

5

**B.** **Because the Court applied the wrong legal standard, it wrongly found that Ewing made his hiring decision "independent of the FMLA interference"**

Instead of addressing what should be the proper legal standard, ODNI simply argues the issue is irrelevant because the court's finding of facts would be "dispositive" regardless.[5] Aee. Br. at 17-18 ("Because the district court's decision turned on a finding of fact that is dispositive under any potentially applicable standard, the legal issues that plaintiff seeks to raise on appeal are not properly presented."). ODNI errs by not realizing that the process used by the court to arrive at its factual findings tainted the findings, and, if not, the court's findings would still be clearly erroneous.

**1.** **The legal errors tainted the factual findings**

To be clear, it is Appellant's position that the lower court's application of the wrong standard and improper allocation of the burden of proof *led* the trial court to the wrong findings of fact. App't. Br. at 16. For example, immediately after the court stated that Hannah had the (1) "burden of showing that defendant's FMLA interference proximately caused her non-selection for the Cyber position" and (2) that she "cannot recover if there was an 'intervening and superseding cause[]' that

---

[5] ODNI fails to argue the court would have arrived at the same conclusion if the same-decision framework had been applied, and therefore waives this argument. See, Aee. Br. at 17-18; *W. Va. Coal Workers' Pneumoconiosis Fund*, 781 Fed. Appx. at 226.

broke the chain of causation between defendant's interference and plaintiff's non-selection,"[6] the court found Ewing's decision was "significantly independent" from the Interference Period issues.  JA 315-16.  Both foundational premises, however, were patent legal errors.  See, App't. Br at 12, 17.  Nonetheless, it is obvious that the court interpreted the facts through this legal prism, rooting its findings even in the language of *Grant Thornton*.  JA 316; directly quoting, *Grant Thornton, LLP v. FDIC*, 435 F. App'x 188, 198 (4th Cir. 2011) ("[Hannah's] non-selection for the Cyber position was a result of many *intervening factors*…which [were] *significantly independent* of the FMLA interference.") (emphasis added).

In determining this issue, the proper standard of review for this Court should not be a finding of clear error but *de novo*.  This is not simply because "the court's wrongful application of the law should be reviewed *de novo* by this Court" (*App't Br.* at 11 (citing, *Everett v. Pitt Cnty. Bd. Of Educ.*, 678 F.3d 281, 288 (4th Cir. 2012)), but also because if any "finding of fact is based on the application of an incorrect burden of proof, the finding cannot stand."  *Abbott v. Perez*, 138 S. Ct. 2305, 2326 (2018) (citing, *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U. S. 485, 501 (1984)).  Said more forcefully, "[a]n appellate cour[t has] power

---

[6] Quoting, *Grant Thornton, LLP v. FDIC*, 435 F. App'x 188, 196-98 (4th Cir. 2011) (which held: "defining intervening and superseding cause as one which is 'significantly independent' from the initial wrong, such that they have 'only a tangential relation to each other.'")

to correct errors of law, including those that . . . infect . . . a finding of fact that is predicated on a misunderstanding of the governing rule of law." *Bose Corp.*, 466 U.S. at 501.

Here, the lower court's legal errors certainly infected its fact-finding process. As noted above, the court improperly placed the entire burden of proof as to causation on Hannah (JA 316); this proved an impossibly high bar since it required Hannah to divine and prove Ewing's internal decision process - a process he was unsure of himself. JA 89:20-24. When asked at trial "if Hannah had just eliminated her attendance and reporting issues in April of 2015, after she started meeting with the EAP counselor, you likely would have hired her for the cyber position in June of 2015; isn't that correct?," Ewing was forced to reply: "**I really don't know**, because the way the question is asked -- and here's why: Because we would need some time to understand that the conduct has actually been corrected. So **I'm not sure that in April or May, we would have**."[7]  JA 89:20-24, 90:6-10 (emphasis added).

---

[7] ODNI claims that this testimony only meant that Ewing was unsure if improved post-April 9th attendance would change his already made-up mind.  Aee. Br. at 15. Such an interpretation, which assumes Ewing's mind was already made up by April 9th, is entirely contradicted by Ewing's testimony a few lines earlier where he states, "[s]he had a very positive reputation in ODNI for those first four years, and now beginning in January of 2015 through at least April, we saw major change in her conduct.  And therefore, I couldn't, I couldn't put the two together. That's why I wanted some guidance from somebody who knew Hannah better than I did."  JA 89:13-19.  The district court also found, which the ODNI cites, that Ewing's mind was not made up until June 30th, almost two months after the Interference Period. JA 308.

Despite the fact Ewing clearly did not know at Trial what decision he would have made absent the Interference Period, ODNI now argues to this Court that Ewing certainly did disentangle the pre and post Interference Period leave issues, weighed them accordingly, and arrived at his decision. Aee. Br. at 18. The record does not support this argument, however. Rather, it shows that Ewing only had a general knowledge of Hannah's attendance issues and he never separated FMLA leave from other leave. JA79:11-12 ("[W]hat I was told were general characterizations that over time, she was not showing up on a reliable or predictable schedule."); *see also* JA 95:6-10.

Considering Ewing's trial testimony, there is no legitimate way to defend the lower court's factual finding that "Ewing's mind was made up not to hire plaintiff for the Cyber Position independent of the FMLA interference," except that the court was interpreting the testimony through the incorrect legal standard and burden of proof. JA 334. This is consistent with the court's ultimate finding that "[o]n this record, it would be too speculative to conclude that Ewing would have selected Hannah for the Cyber position if she had been allowed to take leave on April 9." JA 318. Of course, with the burden fixed on Hannah it was speculative as to what Ewing would have done. But had the burden shifted to Ewing, it is equally clear ODNI could not prove it would have made the same decision regardless of the Interference Period. App't. Br. at 28, 29.

In sum, the lower court's incorrect application of the legal standards infected its factual findings. Accordingly, this Court should as a matter of law reverse the lower court and find that under the same-decision test Hannah proved her case below. *Id.*

## 2. Even applying the clearly erroneous standard Hannah should still prevail

Even if this Court reviews the lower court's factual findings for clear error, Appellant would still prevail under the correct burden of proof. This Circuit has identified four grounds for reversing factual findings: "(1) they were derived under an incorrect legal standard, (2) they 'are not supported by substantial evidence,' (3) they were made while ignoring 'substantial evidence' supporting the opposite conclusion, and (4) they are 'contrary to the clear weight of the evidence.'" *Heyer v. United States Bureau of Prisons*, 984 F.3d 347, 355 (4th Cir. 2021) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 379 (4th Cir. 1995)). "'While clear error review is deferential, it is not toothless.'" *Heyer*, 984 F.3d at 355 (citing *Butts v. United States*, 930 F.3d 234, 238 (4th Cir. 2019)). Because "the district court labored under an improper view or misconception of the appropriate legal standard" this Court has ample grounds for reversing its factual findings. *Jiminez*, 57 F.3d at 379. "In sum, these establish that 'clearly erroneous' review is properly focused upon fact-finding processes rather than directly upon fact-finding results." *Miller v. Mercy Hosp., Inc.*, 720 F.2d 356, 361 (4th Cir. 1983).

While Hannah was not able to prove Mr. Ewing's thought process any more than he was, she has shown that she received "glowing" reviews from her supervisors, who described her performance as "excellent" and "outstanding," citing her "energy, drive, technical competence, superb communication and networking skills, and superior analytical tradecraft." *Hannah P. v. Coats*, 916 F.3d 327, 333 (4th Cir. 2019). From January to March of 2015, Hannah was permitted to remain on the "maxi-flex" schedule that allowed her to work irregular hours. *Id.* The lower court found that "no evidence produced at trial suggest[ed] that the quality of Hannah's work suffered during this time period." JA 299. Functionally, Hannah remained on the maxi-flex schedule until March 30th, 2015.[8] Over the next month Hannah missed or was late to work 13 times, **11 of which occurred during the Interference Period**. *Hannah P*, 916 F.3d at 344, fn 7. Put differently, between being officially removed from the maxi-flex schedule to the start of the Interference Period, Hannah was recorded being late or absent from work only twice. After applying for the Cyber position in late April, Hannah was given a unanimous recommendation from the interviewing panel. JA 41. In his 12 years making hiring decisions, Hannah was the only person that Ewing ever failed to hire that had the unanimous recommendation of the interviewing panel. JA 89. The district court

---

[8] Hannah met with her supervisors to revise her schedule on March 19, 2015, but the changes did not go into effect until she returned from her pre-scheduled leave one week later. JA300-301.

found that "the weeks on leave clearly helped Hannah because after returning to work on June 1, 2015, her attendance was 'nearly flawless,' and her performance was exemplary." JA 305.

Considering the above facts and the testimony of Mr. Ewing as to his hiring decision (see, *supra*), it is evident that if the lower court had applied the correct legal standard, ODNI would have failed to prove it would have made the same hiring decision on the Cyber position. Meaning, the factual findings of the lower court – under the correct burden of proof – are clearly erroneous.

## C.    This Court did not address FMLA interference damages

For its final defense, ODNI rehashes an argument that was rejected by two separate trial judges below. Dkt. Nos. 108 (J. Hilton), 119 (J. Brinkema). It argues that this Court's prior rulings on Hannah's FMLA Retaliation and Rehabilitation Act claims preclude Hannah from seeking damages from the Cyber position on her FMLA Interference claim under the law-of-the-case doctrine. Aee. Br. at 22-23. Because this Court never mandated the scope of damages on the FMLA interference claim, the argument fails.

### 1.    This Court did not mandate the FMLA Interference damages permitted

Although the law of the case doctrine applies to questions actually decided by this court, it does not reach "questions which might have been decided but were not." *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988). "[O]bservations,

commentary, or mere dicta touching upon issues not formally before the Court do not constitute binding determinations." *Major v. CSX Transp., Inc.*, 278 F. Supp. 2d 597, 615-16 (D. Md. 2003) (emphasis added) (quote from *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532-33 (7th Cir. 1982) (citing *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)).

In finding Hannah had satisfied the elements of an FMLA interference claim, this Court did not mandate the scope of her damages. *Hannah P.*, 916 F.3d at 347. To prove an FMLA interference claim, a plaintiff must allege that they were "prejudiced" by the interference. *Reed v. Buckeye Fire Equip.*, 241 F. App'x 917, 924 (4th Cir. 2007). This Court identified the most obvious way in which Hannah was prejudiced, noting that she was forced to take the wrong type of leave. *Hannah P.*, 916 F.3d at 347. Based upon this example of prejudice, this Court held "Hannah has demonstrated a genuine issue of material fact that should have precluded summary judgment on her FMLA interference claim." *Id*.

However, the Court's finding contains no language signaling the *only* way in which Hannah was prejudiced; the Court simply held that she had satisfied the elements of an FMLA Interference claim for purposes of summary judgment. *Id*. ODNI wrongly assumes that because the Court listed one item of prejudice, without mentioning all items, it was mandating the Plaintiff could only seek the one item listed. Aee. Br. at 22. The absence of language does not a mandate make, however,

13

and Plaintiff should therefore be permitted to seek all damages suffered by reason of ODNI's FMLA Interference.

### 2.      Findings on other claims are not dispositive of this claim

While this Court upheld the lower court's summary judgment decision against Hannah as to liability on her FMLA Retaliation and Rehabilitation Act discrimination claims, that holding is not dispositive of Hannah's FMLA Interference claim.  This is because the elements of the claims are materially different and because the negative findings in the former two claims actually help prove the current FMLA Interference claim, not the opposite.

First, both the FMLA Retaliation and Rehabilitation Act claims apply the *McDonnell Douglas* burden-shifting framework.  *Hannah P*., 916 F.3d at 347.  This Court previously found that under both claims Hannah likely met the burden on her prima facie case but still her "attendance problem was a legitimate and nondiscriminatory reason to not hire her."  *Id*. at 345, 347.  For this reason, the Court disallowed Hannah from moving forward on her two discrimination claims.  *Id*.

By contrast, FMLA Interference claims are "prescriptive claims", largely meaning that the employer's intent is irrelevant.  See, *Sharif v. United Airlines, Inc*.,[9] 841 F.3d 199, 203 (4th Cir. 2016); *Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726,

---

[9] *Sharif* provides a helpful discussion on the distinctions between interference and retaliation claims.

739 (4th Cir. 2022). For FMLA Interference, "a plaintiff seeking redress for employer interference with an entitlement is only required to show that he or she qualified for the right that was denied." *Id.* Since under FMLA Interference, the claim is prescriptive and ODNI's intent is irrelevant, this Court never would have nor did consider before whether Hannah's "attendance problem was a legitimate and nondiscriminatory reason to not hire her" under the FMLA Interference claim. *Hannah P.*, 916 F.3d at 345. Moreover, the issue was not one of liability, which would have been raised on summary judgment by ODNI and properly before this Court last time, but instead was one of damages, to be decided by a later trial (ie- the trial now being appealed).

Finally, the arguments for the FMLA Retaliation claim were the opposite of those raised in the present Interference case. The Interference claim was based upon the *denial* of Hannah's FMLA leave in April of 2015, which she argued *caused* much of the attendance issues that were used against her in the Cyber hiring decision. JA 316-317. By contrast, the primary argument underlying Hannah's Retaliation claim was that the FMLA leave finally *granted* in May of 2015, was the basis of the retaliatory non-hire for the Cyber position. Clearly, one cannot retaliate for leave never given – the Interference argument. Furthermore, Hannah's Interference argument seeks the loss of the Cyber position as a *damage*, by reason of the interference, not an element needed to be proved as part of the *liability* claim, as in

the prima facie Retaliation count.  See, *Hannah P*., 916 F.3d at 347 ("To establish a prima facie case of FMLA retaliation, a plaintiff must demonstrate that … (2) her employer took **an adverse employment action** against her…") (emphasis added).

But more ironically is Appellee's argument now before this Court.  The same "attendance problems" - previously argued as the "legitimate business reason" why it denied the Cyber position under FMLA Retaliation  – largely occurred during the Interference Period.  See, *Hannah P.* 916 F.3d at 345 ("But the record evidences no less than 13 attendance issues that occurred in the 46 days between Appellee's first attempt to accommodate Hannah on March 19, 2015, and the revised plan made on May 4, 2015."); *See also Id.*, fn 7 (listing 13 recorded attendance issues, **11 of which occurred during the Interference Period**).  As a result, Appellee's brief is internally contradictory.  Specifically, ODNI initially argues that Ewing's decision not to hire Hannah was entirely unrelated to her attendance issues during the Interference Period.  Aee. Br. at 18.  But, in their final argument, ODNI claims its "legitimate" reason for not hiring her *was* the "attendance issues" that occurred almost entirely during the Interference Period. *Id.* at  19.  Appellee appears to rob Peter to pay Paul, as they say.

This Court previously held that "a continuous attendance issue is a legitimate reason for withholding an employment benefit."  *Hannah P.* 916 F.3d

at 343. ODNI twists that holding to mean that a continuous attendance issue —
caused by an employer's own illegal FMLA interference — is a legitimate reason
for withholding an employment benefit. This Court held no such thing, and this
argument should be denied for the third time.

**D.**     **The recent holding in *Roberts* supports Hannah's arguments**

Since the filing of Appellant's Opening Brief, this Court has made an
FMLA Interference ruling that bears upon this case. Clarifying the pertinent
black letter law in this area, the Court in *Roberts v. Gestamp W. Va., LLC* held
that once an employee proves "prejudice" under FMLA Interference, "an
employer may avoid liability **if it shows** it would have taken the contested adverse
employment action regardless of the employee's FMLA leave." 45 F.4th at 732-
33 (emphasis added) (citing, *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541,
547 (4th Cir. 2006)). Appellant submits this standard is virtually identical to the
same-decision analysis and had this standard been applied by the trial judge,
Appellant as a matter of law would have prevailed on her claim for the Cyber
damages.

## **CONCLUSION**

For the reasons stated herein and in Appellant's Opening Brief, Hannah asks
this Court to reverse, find ODNI liable for the Cyber damages and remand to the
lower court for a determination solely on the issue of mitigation of damages.

*/s/  Timothy P. Bosson*
Timothy P. Bosson
Isaiah R. Kalinowski
BOSSON LEGAL GROUP PC
8300 Arlington Blvd.,
Suite B2
Fairfax, VA  22031
(571) 775-2529
tbosson@bossonlaw.com
ikalinowski@bossonlaw.com

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

this document contains <u>4,209</u> words.

2.     This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman.</u>

Dated:  October 18, 2022          Respectfully submitted,


*/s/  Timothy P. Bosson*
Timothy P. Bosson

*Counsel for Appellant*